LATHROP v. RICE & ADAMS CORPORATION.

District Court, W. D. New York. May 31, 1927.

1. Patents ⬅327(14)—Decree for infringement against user is conclusive as to all matters involved against manufacturer, who openly conducted defense.

Where a suit against the user of an infringing device is openly defended by the manufacturer, who has complete control of the defense, a decree holding the patent valid and infringed is conclusive against him in a subsequent suit against him by the same complainant; but the decree is not so binding unless he had full control of the defense, with right to appeal.

2. Patents ⬅81—To establish prior use to defeat a patent, court must be satisfied, by proof beyond reasonable doubt.

To establish prior use to defeat a patent, the court must be satisfied by the proof beyond a reasonable doubt.

3. Patents ⬅328—880,713, for improvement in can-washing machine, claims 2–4, 9–13, held valid and infringed.

Blair patent, No. 880,713, for improvement in can-washing machines, claims 2–4, 9–13, held not anticipated, valid as against claimed prior use, and infringed.

4. Patents ⬅312(1)—Plaintiff in suit for infringement has burden of proof.

Plaintiff in suit for infringement of patent by defendant has burden of proof.

In Equity. Suit by Harry D. Lathrop against the Rice & Adams Corporation. Decree for complainant.

See, also, 6 F.(2d) 91.

Joshua R. H. Potts, of Chicago, Ill., and John S. Powers, of Buffalo, N. Y., for plaintiff.

Mitchell & Staples, Frederick G. Mitchell, and Charles J. Staples, all of Buffalo, N. Y., for defendant.

HAZEL, District Judge. The patent in suit to Blair, No. 880,713, granted March 3, 1908, for improvements in can-washing machines, assigned to plaintiff, was litigated in the Northern district of Illinois, Eastern division, Judge Carpenter presiding, in an action brought by the plaintiff herein against the defendant Bowman Dairy Company, and held valid and infringed as to the claims there in controversy. The defendant in that case was a user of a can-washing machine manufactured by defendant in this action, which had been made a party defendant in the action against the user; but, on motion, the service of process was quashed on the ground that the Rice & Adams Corporation had no regular and established place of business in the district where the action was brought. After entry of the final decree, plaintiff brought action in this district, where defendant conducts its business, for infringement of the same claims of the patent that were in issue in the former case, and now contends that defendant is bound by the final decree in the action against Bowman Dairy Company, claiming that it conducted and controlled the defense at its own expense and later paid the judgment that was obtained—in short, that Rice & Adams Corporation was the real defendant, and therefore bound by the decree as to all matters which were or might have been asserted in defense of the charge of infringement; that it cannot again

be heard, either as to the validity of claims, prior use, or noninfringement; and that, if it was dissatisfied with the prior decree, it should have appealed the case. Defendant, however, denies that said decree is res adjudicata, or binding upon it, or that it is chargeable with privity with the Bowman Dairy Company, and testimony was taken upon this issue.

[1] It is undoubtedly a rule of law that, in a suit against the user of an infringing machine, where the manufacturer defended the action and became the real defendant, and a decree, that was affirmed on appeal, determined the claims of the patent to be valid, such a decree became res adjudicata, and the manufacturer cannot again be permitted to defend an action subsequently brought on the same claims for infringement. Bemis Co. v. Brill Co. (C. C. A.) 200 F. 749; Souffront v. Le Compagnie Des Sucreries, 217 U. S. 475, 30 S. Ct. 608, 54 L. Ed. 846. And if a manufacturer of an infringing device has complete charge and control of an action against a user, with the right of appeal, and the patent is held valid and infringed, the judgment of the court is conclusive upon him, in an action afterwards brought against him by the same complainant, as to all matters of fact or law that were involved therein and relating to the particular device which is the subject of controversy. D'Arcy v. Staples et al. (C. C. A.) 161 F. 733; Bigelow v. Old Dominion, 225 U. S. 111, 32 S. Ct. 641, 56 L. Ed. 1009, Ann. Cas. 1913E, 875; Rumford Chem. Works v. Hygienic Co., 215 U. S. 156, 30 S. Ct. 45, 54 L. Ed. 137; Greenleaf on Evidence, § 523; 3 Robinson on Patents, § 1176; Gen. Elec. Co. v. Morgan (C. C. A.) 168 F. 52; Fish v. Vanderlip, 218 N. Y. 29, 112 N. E. 425, Ann. Cas. 1916E, 150; Walz et al. v. Agricultural Ins. Co. (D. C.) 282 F. 646.

This principle finds unqualified support in Kessler v. Eldred, 206 U. S. 285, 27 S. Ct. 611, 51 L. Ed. 1065, wherein it is expressly stated that, "if rights between litigants are once established by the final judgment of a court of competent jurisdiction those rights must be recognized in every way, and wherever the judgment is entitled to respect, by those who are bound by it." In Elliott v. Roto Co. (C. C. A.) 242 F. 941, it was sought to estop the defendant from interposing its defense in an infringement suit, on the ground that it was bound by a decree in a previous suit on the same patent, in another federal jurisdiction, by the same plaintiff, against a seller of a motor manufactured by defendant. Estoppel, however, was denied

on the ground that, in the earlier action, the defense was not open or avowed, and accordingly the element of mutuality was lacking, the defendant being unaware that plaintiff knew that it was defending the case in place of the named defendant. The court ruled that whether the defendant was estopped or not depended upon the evidence; that one who relies on estoppel must prove that the defense was actually conducted by the defendant in the subsequent action. Such, I conceive, is the rule of law applicable to the present situation. The merits pertaining to the question of res adjudicata and privity may now be examined.

Admittedly the attorneys of record in this action also participated as counsel in the case against Bowman Dairy Company. They were associated with Parker & Prochnow, employed by Rice & Adams Corporation, as patent counsel in the prior action, with the consent of Montgomery, Smith & Herriott, solicitors for defendant. Parker & Prochnow, or Mr. Bean, an associate, examined witnesses on deposition. It is shown that a Mr. Stevens and a Mr. MacFadyen, representatives of Rice & Adams Corporation, were present when depositions were taken in New York City and Chicago, and furthermore that Mr. Adams, of the defendant corporation, attended taking depositions at Buffalo. Indeed, there is abundant evidence showing that Rice & Adams Corporation was keenly interested in the pending litigation, even to the extent of its patent counsel arguing the case in court, and after the interlocutory decree knew that Bowman Dairy Company, through its attorneys, was engaged with Mr. Potts in effecting a settlement, and, moreover, that it supplied the money, or part thereof, to adjust the litigation. To apply the doctrine of res adjudicata or privity, however, it must be shown that Rice & Adams Corporation had full control of the defense, including the right of appeal from the decision of the court. This has not been sufficiently shown. Indeed, the witness Herriott, who appeared throughout the litigation as attorney for the Bowman Dairy Company, testified that neither Parker & Prochnow, his counsel, nor Mitchell & Staples had any control over the defense interposed by the Bowman Dairy Company, and after the decision holding the patent valid and infringed he was unwilling to take an appeal, and advised his client not to appeal, but to make a settlement; that he refused to permit Rice & Adams Corporation to appeal or control the final disposition of the case in any way, and that he independently initiated negotiations for a set-

tlement, and, he added, if Rice & Adams Corporation had declined to contribute towards the settlement, it would not have sold any more machines to his client.

This evidence is not discredited, though I have considered the criticisms made upon it by counsel for plaintiff. Herriott's various references to Parker & Prochnow or to Mitchell & Staples, as to adjournments or fixing dates of argument, does not prove that the latter had control of the case or the right of appeal from the decree of the court. Nor do the exhibit letters written by Mitchell & Staples to Herriott, or to plaintiff's counsel, relating to adjustment, stating that, if the amount is not acceptable, "we shall be obliged to appeal and will do so," overcome Herriott's evidence that his firm alone controlled the litigation, and, on his advice, defendant Bowman Dairy Company did not appeal or consent to an appeal. Since Rice & Adams Corporation was not a party, it had no right of appeal, and cannot be deemed to have been bound by the decree .(Australian Knitting Co. v. Gormly [C. C.] 138 F. 92), which, in fact, was entered after settlement of the case and without defendant being aware of its entry. Plaintiff, however, presumably anticipating this conclusion, has given testimony bearing on the validity of the patent and its infringement.

[2, 3] Thirteen claims are involved, of which the following are said to be infringed: 2, 3, 4, 9, 10, 11, 12, and 13. It will suffice to set out claim 12, which specifically embodies the entire structure, and the broad claim, 13:

"12. A receptacle washing apparatus comprising a vat having a plurality of compartments, a circulating system connected to each vat, means to heat the contents of one or more of said vats, discharge pipes connected to said systems having upwardly directed discharge openings, opposed upright discharge pipes having lateral facing discharge openings, and endless carrier comprising laterally spaced members adapted to receive thereon receptacles to be cleansed, said endless carrier having an upper horizontal run projecting beyond said vat at the intake end thereof, a receptacle beneath said projecting portion of said run of said carrier to receive material draining from receptacles positioned thereon, a housing mounted upon said vat through which the receptacles are traversed upon said carrier, and lateral guides for the receptacles supported upon said projecting portion of said carrier.

"13. A receptacle washing apparatus comprising a support, a carrier adapted to receive receptacles thereon, cleansing medium pipes having discharge orifices directed toward said receptacles positioned thereon, and means adapted to receive from the receptacles, when positioned upon the carrier and in a condition uncontaminated by the cleansing medium, the material contained in said receptacles when in use, and discharged therefrom when said receptacles are positioned upon said carrier."

The patented washing machine comprises a long, oblong table, with an endless chain conveyor, tanks and vats underneath the table, and a hood over it. In the hood there is provided washing, sterilizing, and drying instrumentalities for drying a series of inverted cans, which rest on the chains as they are conveyed, for draining the residue or clinging milk or cream adhering to the interior of the cans, and then washing and drying them. At the feed end of the machine, there is a slanting drip pan or table projecting from the hood (Fig. 3–41) where the cans discard their drippings, which, in their travel, first flow into a discharge spout. The movements of the cans are progressive and continuous during the operation of the machine. The drip pan apparatus is separate from the washing operation and entirely free from contact therewith.

The alleged infringement relates exclusively to the can-draining attachment, by which the milk or cream is enabled to drip into a spout before the cans are rinsed. The utility and commercial success of the invention is not questioned. It quickly went into general use and has taken the place of prior can-washing machinery. The machine of the defendant, according to the evidence, corresponds, at the forward end, to the drip-saving arrangement by which the cans pass into the machine and are washed and dried, and then leave the machine at the opposite end, substantially as described in the Blair patent. Defendant's machine is driven by pumps, motors, and an oscillating device that intermittently moves the cans forward, as shown in plaintiff's Exhibits 5 and 6, pictorial representations of defendant's machine. Its operation was observed in the Bowman dairy plant and also in the plant of the defendant.

The defendant challenges the validity of the patent, mainly on the ground that the defendant, as early as 1902, prior to the Blair invention, openly manufactured a can-washing machine with a drip-saver attachment, and, incidentally, that the patent is anticipated by the prior art, and, in any event, defendant's structure is not an infringement.

First, as to anticipation: The prior art does not disclose a power-driven washing ma-

chine in combination with a drip-saver located away from the rinsing instrumentalities to avoid contamination by the cleansing medium.

In the Stubbs patent, to which defendant's expert witness attaches importance, and which may fairly be regarded as the best reference, there is shown a milk can-washing appliance having a milk saver with each can, inverted over a receptacle to allow the residue to drip into it; but there is no continuous or progressive traveling of the cans to the cleansing part of the machine. The construction of the jets was such that milk contact with the water was difficult to avoid without great delay. It was operated manually; each can requiring separate treatment. The patent was given consideration by the Patent Office at the time of passing upon the Blair application, and it was determined that the Blair improvement was patentable.

The earlier Hood patents are not important references, because of their failure to adapt a drip saver; and Hood's later patent, wherein he included a can-draining feature, did not operate to prevent the saved milk from being contaminated by the rinsing operation, while his patent No. 949,121, dated February 15th, 1910, which, in combination, included a device for saving the drippings, was subsequent to the date of the Blair application. It is true that separate elements of the combination claims in suit are found in different prior patents and publications in evidence, but none disclose the combinations of the elements of the claims in suit, and none avoid the contamination of the milk by the washing operation, and none were capable of performing the functions of the Blair patent. The changes embodied in the Blair machine and combination of old elements may not now seem to have been a difficult accomplishment, but the problem of saving the remaining milk and cream and quickly washing the cans by co-operative means in rapid succession evidently did not find easy solution until Blair invented the means for doing so. It was not an obvious expedient to do this, but involved the inventive skill to make and adapt the necessary changes and bring about a harmonious result.

Testimony has been given on the part of defendant by various witnesses claiming to show that defendant in 1902, prior to the filing of the Blair application, constructed a bottle-washing machine with a co-operative drip-saver embodiment. Such an apparatus is claimed to have been operated by Orlando Adams at a creamery on Allen street in this city. It is described to have been a galvanized iron pan suspended below the track, and that it had an outlet, the bottles being fed into the machine, the loose milk dripping into the pan, and the bottles then washed. But the witnesses testified solely from memory of an occurrence dating back 25 years, and, in the absence of a record or memorandum or machine produced to support the oral testimony, it cannot be accepted to overcome the showing of originality and novelty of the Blair patent. The rule with relation to prior use is that the court must be satisfied by the proof beyond reasonable doubt. It is held in Coffin v. Ogden, 18 Wall. 120, 21 L. Ed. 821, in the Barbed Wire Case, 143 U. S. 275, 12 S. Ct. 443, 36 L. Ed. 154, and in numerous other adjudications, that every reasonable doubt should be resolved against the witnesses so testifying. I am therefore constrained to reject the testimony of defendant as to any prior use of a similar machine as that described in the claims.

[4] The burden is upon plaintiff to prove infringement of its patent by defendant, and, in this connection, defendant contends that there has been a failure to identify any alleged infringing machine; that plaintiff rested its evidence, as to infringement, upon the appearance of a machine sold to the Bowman Dairy Company by defendant, which embodied a step by step or oscillating movement of the cans, and not a continuous or progressive movement, as claimed by plaintiff. There was, however, additional evidence to substantiate the manufacture of machines by defendant of the same type as the Bowman dairy machine. The varying means of moving the cans on an endless carrier as in the Blair machine, or an intermittent feed, as in defendant's, are believed to be mechanical equivalents for accomplishing the same purpose. So, also, as to pipes, compartments, arrangements of drip saver, means of heating the vats, arrangement of trough, hood, etc.

Claim 13 broadly covers a carrier cleansing means and spraying device towards the conveyed cans, together with a drip saver which receives the uncontaminated milk or cream. The endless chain carrier is not an element. The patent is not limited to a form of conveyance of the cans over the compartments in the tank, and defendant's adaptation of another form of conveyor and different arrangement of the details, vats, pipes, etc., does not avoid infringement, for such means are the substantial equivalents of the means described in the patent in suit. They function in the same way and achieve the same

result. Other questions presented in argument need not be considered.

The claims of the patent are valid and infringed by the defendant; and a decree, with costs, may be entered.