**CITY OF LOUISVILLE, KY., et al., v. BABB, County Treasurer.**

No. 95.

District Court, S. D. Indiana, New Albany Division.

June 7, 1934.

Arthur B. Bensinger, of Louisville, Ky., and Wilmer T. Fox, of Jeffersonville, Ind., for plaintiffs.

Merle N. A. Walker and Frank C. Dailey, both of Indianapolis, Ind., and Walter Prentice, L. A. Douglass, and Joseph H. Warder, Sr., all of Jeffersonville, Ind., for defendant.

BALTZELL, District Judge.

The plaintiffs in this action are seeking to enjoin the defendant Babb, as treasurer of Clark county, Ind., from levying and collecting taxes upon their property located in Clark county, Ind. The property which plaintiffs claim is exempt from taxation is that part of the bridge within the state of Indiana connecting the cities of Louisville, Ky., and Jeffersonville, Ind., together with an executive office building, tollhouses, tools, etc., and the real estate upon which such bridge and improvements are located.

Pursuant to Equity Rule 70½ (28 USCA § 723), special findings of fact and con-

clusions of law have been prepared and filed herein. It will therefore be unnecessary, for the purposes of this opinion, to restate such facts in detail. Briefly stated, however, the facts are that on February 25, 1928, there was enacted by Congress a law "Authorizing the City of Louisville, Kentucky, to Construct, Maintain, and Operate a Toll Bridge across the Ohio River at or near said City." There was also enacted by the General Assembly of the State of Kentucky an act providing for the incorporation of the plaintiff Louisville Bridge Commission (hereinafter referred to as the Commission) for the purpose of the construction, operation, and repair of such bridge. Pursuant to such law, the Commission came into existence, and did construct the bridge in question connecting the cities of Louisville, Ky., and Jeffersonville, Ind. The title to all the real estate upon which the bridge, office building, tollhouses, etc., are located was taken in the name of the city of Louisville and now stands in the name of such city. The bridge was constructed by the Commission, and bonds were issued by the city of Louisville for the payment of the construction thereof. The bridge, pursuant to the act of Congress, was to be, and is, a tollbridge. Every person using such bridge is required to pay toll for the privilege thereof, including the city of Jeffersonville, Ind., and the United States government. The police officers of Jeffersonville, however, are exempt therefrom when in the pursuit of persons who have committed crimes and are fleeing from arrest. A schedule of tolls for the use of such bridge was prepared by the plaintiffs, placed in effect, and is still effective. The construction of the bridge was not for the purpose of profit, but the schedule of tolls provides sufficient income for the payment of the cost of maintenance, operation, and repair thereof, and also provides a sinking fund sufficient to pay the bonds and interest thereon as they mature. The plaintiff Commission will continue the operation of the bridge until the bonded indebtedness thereon has been fully paid, at which time such Commission will cease to function and will pass out of existence. The city of Louisville will then assume the duty of operating such bridge, and tolls may be collected, unless provision is otherwise made, for the cost of maintenance, operation, and repair thereof. The bridge is open to the use of the public, provided the users thereof pay the required toll. Thousands of persons throughout the United States and foreign countries pass over this bridge.

Prior to the time of the construction of the bridge there was passed by Congress an act authorizing the city of Louisville, or a Commission afterwards to be incorporated, to construct, maintain, and operate it, which act was approved on February 25, 1928 (45 Stat. 146).[1] There was also enacted by the General Assembly of the Commonwealth of

[1] "Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That in order to promote interstate commerce, improve the Postal Service, and provide for military and other purposes, the city of Louisville, Kentucky, or any board or commission of said city which may be duly created or established for the purpose, be and is hereby authorized to construct, maintain, and operate a highway bridge and approaches thereto across the Ohio River at a point suitable to the interests of navigation, extending from some point in the city of Louisville, Kentucky, across said river to a point opposite on the Indiana shore, in accordance with the provisions of the Act entitled 'An Act to regulate the construction of bridges over navigable waters,' approved March 23, 1906, and subject to the conditions and limitations contained in this Act.

"Sec. 2. There is hereby conferred upon the said city of Louisville or such board or commission and the successors thereof all such rights and powers to enter upon lands and to acquire, condemn, occupy, possess, and use real estate and other property needed for the location, construction, maintenance, and operation of such bridge and its approaches as are possessed by railroad corporations for railroad purposes or by bridge corporations for bridge purposes in the State in which such real estate or other property is situated, upon making just compensation therefor, to be ascertained and paid according to the laws of such State, and the proceedings therefor shall be the same as in the condemnation or expropriation of property for public purposes in such State.

"Sec. 3. The said city of Louisville or such board or commission and the successors thereof are hereby authorized to fix and charge tolls for transit over such bridge, and the rates of tolls so fixed shall be the legal rates until changed by the Secretary of War under the authority contained in the Act of March 23, 1906.

"Sec. 4. In fixing the rates of toll to be charged for the use of such bridge the same shall be so adjusted as to provide a fund sufficient to pay for the reasonable cost of maintaining, repairing, and

the State of Kentucky a statute providing for the incorporation of the plaintiff Commission.

Afterwards, the city of Louisville acquired property, part of which was in the city of Louisville, Ky., and part in the city of Jeffersonville, Ind., upon which property such bridge and the necessary office building, tollhouses, etc., were to be constructed. Before the construction of the bridge was completed, however, there was enacted by the General Assembly of the State of Indiana an act exempting certain bridges from taxation, approved March 11, 1929.[2]

Prior to the commencement of this suit, a taxpayer of Clark county, Ind. (in which county the bridge in question is located), filed two suits in the Clark circuit court against the auditor of such county, in which suits the plaintiff sought to mandate the auditor to place upon the tax duplicates of such county the property in question. The auditor was represented in such suits by the county attorney, and also by Mr. Wilmer T. Fox, one of counsel for plaintiffs in this action, and who, in the litigation in the Clark circuit court, while attorney of record for the auditor, was employed and compensated by the Louisville Bridge Commission, one of the plaintiffs in this suit. The Clark circuit court, after a full hearing, held that the property was not exempt from taxation, under the Act of 1929, supra, and entered a decree mandating the auditor to have the same entered upon the tax duplicates of the county. No appeal was taken from this decree, and in compliance therewith, the auditor did place the property upon the tax duplicates and certify the same to Charles V. Babb, county treasurer. Therefore, the defendant contends that the plaintiffs are estopped from prosecuting this action, because the questions presented in this case have been adjudicated by the circuit court of Clark county, Ind. He asserts that, even though neither the city of Louisville nor the Louisville Bridge Commission was a party to the actions in the Clark circuit court, yet they each had knowledge of the institution and pendency thereof; that they each participated in the trial thereof, through Mr. Fox; and that they each, having knowledge of the institution and pendency of such actions, neglected and failed to file an intervening petition therein.

■ It is well settled that, since neither of the plaintiffs to this action were parties to the actions in the Clark circuit court, no duty devolved upon them to appear voluntarily and seek to intervene therein. Neither is their failure to appear any evidence of the lack of diligence upon their part, such as to preclude their seeking protection against any judgment that may be entered in such court.

In the case of Chase National Bank v. Norwalk, 54 S. Ct. 475, 479, 78 L. Ed. 894,

---

operating the bridge and its approaches under ·economical management, and to provide a sinking fund sufficient to amortize the cost of such bridge and its approaches, including reasonable interests and financing cost, as soon as possible under reasonable charges but within a period of not to exceed twenty years from the completion thereof. After a sinking fund sufficient for such amortization shall have been so provided such bridge shall thereafter be maintained and operated free of tolls, or the rates of tolls shall thereafter be so adjusted as to provide a fund of not to exceed the amount necessary for the proper maintenance, repair, and operation of the bridge and its approaches under economical management. An accurate record of the cost of the bridge and its approaches, the expenditures for maintaining, repairing, and operating the same, and of daily tolls collected shall be kept and shall be available for the information of all persons interested.

"Sec. 5. The right to alter, amend, or repeal this Act is hereby expressly reserved."

[2] "Section 1. Be it enacted by the general assembly of the State of Indiana, That the following property shall be exempt from taxation: Any bridge now or hereafter/ constructed wholly within the State of Indiana across a navigable stream or now or hereafter constructed across a stream forming a boundary of this state, and the real estate and personal property appurtenant thereto, when owned either by the State of Indiana or by any municipality or political subdivision thereof or by another state or by any municipality or political subdivision of such other state, if such bridge be free of tolls or if such bridge shall have been authorized or consented to by an act of Congress: Provided, That, except for tolls necessary for the proper maintenance, repair and operation of such bridge and its approaches under economical management, the same shall be operated free of tolls after a sinking fund shall have been provided from tolls sufficient for the amortization of the cost of the bridge and its approaches, including ·reasonable interests and financing cost." Acts Ind. 1929, p. 296, c. 94.

the Supreme Court of the United States said: "The law does not impose upon any person absolutely entitled to a hearing the burden of voluntary *intervention* in a suit to which he is a stranger."

■ Before one not a party to an action is bound thereby, there must be shown affirmatively that such nonparty actually assumed control of the defense in such action, and that such defense was as complete as though he had been an actual party thereto. This includes not only the trial in the first instance, but the right to appeal, as well. Lathrop v. Rice & Adams Corporation (D. C.) .21 F.(2d) 124; Id., 278 U. S. 509, 49 S. Ct. 220, 73 L. Ed. 480; Australian Knitting Co. v. Gormly (C. C.) 138 F. 92; City of Mankato v. Barber Asphalt Paving Co. (C. C. A.) 142 F. 329.

■ The evidence in this case discloses that while some of the questions involved in this action were also involved in the actions in the Clark circuit court, yet Mr. Fox did not have complete control of the defense in that court. The facts are that a motion for a new trial was filed, and while he (Fox) was confined to a sanitarium and had no knowledge of it, such motion was withdrawn by the county attorney. Further, that at the time this fact was first learned by Mr. Fox, it was too late to prosecute an appeal to the Supreme Court of the State of Indiana. Under these circumstances, and under the law, neither the plea of estoppel nor res adjudicata can be sustained.

It is the contention of the plaintiffs that their property has, at all times since the completion of the bridge in 1929, been employed and used as a federal means, agency, and instrumentality to "promote interstate commerce," etc., and is, therefore, exempt and immune from taxation by the state of Indiana. That the taxation of such property by the state of Indiana is in violation of the Constitution and laws of the United States because such bridge constitutes a federal instrumentality by means of which the government of the United States seeks to carry into execution its power to regulate and promote interstate commerce. It is further contended that, under the law of the state of Indiana, that portion of the bridge located in such state, together with the executive office building, tollhouses, tools, etc., located therein, are exempt from taxation. Acts 1929, supra. On the other hand, the defendant contends that the taxation of such property by the state of Indiana does not violate the Constitution of the United States. It is also contended by the defendant that the Indiana statute, supra, under which the plaintiffs seek to have their property exempted from taxation, is unconstitutional and void.

■ The first question, therefore, to be determined is whether or not the taxation of plaintiffs' property, within the state of Indiana, by such state, is in violation of the provisions of the Constitution of the United States.

It is conceded that the Ohio river, at the place where the bridge was constructed and is now located, is a navigable river. It therefore became necessary for the plaintiffs in this action, before attempting to construct such bridge, to procure the consent of Congress for the construction thereof. 33 USCA § 401. In compliance with this statute, there was enacted by Congress a statute, supra, extending such authority to the city of Louisville, Ky. This act was approved on February 25, 1928, and the title thereof reads as follows: "An Act Authorizing the City of Louisville, Kentucky, to construct, maintain, and operate a toll bridge across the Ohio River at or near said city." The enacting clause of such act provides: "That in order to promote interstate commerce, improve the Postal Service, and provide for military and other purposes, the city of Louisville, Kentucky, or any board or commission of said city which may be duly created or established for the purpose, be and is hereby authorized," etc. It is argued by the plaintiffs that the act itself specifically provides that it is the purpose to promote interstate commerce, etc., hence any taxation of the property by the state of Indiana is in violation of the Commerce Clause of the Federal Constitution (article 1, § 8, cl. 3). The language used in the enacting clause of such statute is clearly a declaration and in no way affects the purpose for which the legislation was enacted. It is clear that the purpose of the legislation was to comply with the statute requiring the consent of Congress before a bridge may be constructed over a navigable river. There can be no doubt that the act of Congress simply authorized the city of Louisville or any commission of such city to do the things that were necessary for the construction of such bridge; that is, acquire, condemn, occupy, possess, and use real estate and other property which may be needed for the location, construction, maintenance, and operation of the bridge. In addition to this right, it was given authority to fix and charge tolls for transit over such bridge. The language of the act itself states

that in addition to the promotion of interstate commerce, it shall also "improve the Postal Service, and provide for military and other purposes." Such declarations in an act of Congress have been construed by the Supreme Court of the United States as not to interfere with the right of the state to impose taxes. See Postal Telegraph Cable Company v. Charleston, 153 U. S. 692, 14 S. Ct. 1094, 38 L. Ed. 871. This principle of law was approved in the case of Henderson Bridge Company v. Kentucky, 166 U. S. 150, 17 S. Ct. 532, 534, 41 L. Ed. 953, in which opinion the court said: "The contrary view would withdraw from the taxing power of the states nearly all the railroads and stage routes throughout the country." It, therefore, cannot be seriously contended that such a declaration in the act of Congress can be construed so as to prevent the state of Indiana from levying a tax upon the property of plaintiffs located within such state.

█ The tax levied by the state of Indiana upon the property of plaintiffs cannot in any manner be considered a tax upon interstate business passing over the bridge. As was stated in the case of Henderson Bridge Company v. Kentucky, supra: "Clearly, the tax was not a tax on the interstate business carried on over or by means of the bridge, because the bridge company did not transact such business. That business was carried on by the persons and corporations which paid the bridge company tolls for the privilege of using the bridge. The fact that the tax in question was to some extent affected by the amount of the tolls received, and therefore might be supposed to increase the rate of tolls, is too remote and incidental to make it a tax on the business transacted." While there are some distinctions between the facts in the instant case and those of the Henderson Bridge Company Case, yet the principles involved are similar, and the same rules will apply.

It is apparent that the only effect the imposition of the tax in question will have upon interstate commerce is that it might increase the amount of tolls which those using the bridge and engaged in interstate commerce are required to pay. Such charges are for the privilege of passing over the bridge and are not a charge upon the goods which are carried by such persons as may pass over such bridge. Any additional toll charge is simply incidental and too remote to be considered as a burden upon interstate commerce. The identical question was decided in the case of New York, Lake Erie & Western Railway Company v. Pennsylvania, 158 U.

S. 431, 15 S. Ct. 896, 898, 39 L. Ed. 1043, in which case the court said: "It is contended that such taxes tend to increase the rents or tolls demanded and received by the company owning the road, and thus constitute a burden upon transportation and commerce between the states. * * * We have frequently had occasion to show that the existence of federal supervision over interstate commerce, and the consequent obligation upon the federal courts to protect that right of control from encroachment on the part of the states, are not inconsistent with the power of each state to control its own internal commerce, and to tax * * * property, * * * of its own corporations engaged in such commerce; nor with its power to tax foreign corporations on account of their property within the state." See also Gloucester Ferry Company v. Pennsylvania, 114 U. S. 196, 5 S. Ct. 826, 29 L. Ed. 158.

The bridge in question is owned and operated by the plaintiffs, neither of which is engaged in interstate commerce, and neither of which is engaged in the transportation of property of any kind which is in interstate commerce. It is obvious that the imposition of a tax upon the property of plaintiffs located within the state of Indiana by such state is not in violation of the Constitution of the United States.

█ The concluding question to be determined is whether or not the statute of the state of Indiana, supra, attempting to exempt bridges of a certain character from taxation, is constitutional.

It is apparent that the statute in question is intended to exempt from taxation the property of plaintiffs in this action, located within the state of Indiana. The provision of the Constitution of the State of Indiana empowering the Legislature to provide for a uniform and equal rate of assessment and taxation, and exempting certain property from taxation, is found in article 10, § 1 thereof, which reads as follows: "The general assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only, for municipal, educational, literary, scientific, religious or charitable purposes, as may be especially exempted by law."

In order that the property in question may be exempt from taxation, it must fall within one of the exceptions contained in the above provision of the Constitution. The

exception relied upon by plaintiffs in this action is that the property of plaintiffs in question is "for municipal * * * purposes." Unless such property falls within that term, it is not exempt from taxation by the state of Indiana. The Supreme Court of the State of Indiana has recently held, in the case of Stark et al. v. Kreyling, 188 N. E. 680, 681, that: "No class of property is exempt from taxation unless it is 'especially exempted by law'; and only property used for 'municipal, educational, literary, scientific, religious or charitable purposes' can be 'especially exempted by law.'"

The property upon which the defendant treasurer seeks to collect a tax is owned and controlled exclusively by the plaintiffs, neither of which is a municipal corporation within the state of Indiana. The facts are that no municipal corporation within the state of Indiana has any interest in, or control over, the property sought to be exempted from taxation. The only rights that the city of Jeffersonville, or the inhabitants thereof, have in connection with the bridge in question, are to use the same in transit across the Ohio river. For the privilege of such use they must pay the same tolls, charges, etc., that any other individual, whether he be a citizen of the state of Indiana, of any other state in the United States, or of any foreign country, pays.

█ There can be no doubt that the term "for municipal purposes," as used in the Constitution, applies only to a municipality within the state of Indiana. The state of Indiana has no authority to regulate or control the activities of any municipality not within its boundary. Therefore, it is apparent that the provision of the Constitution exempting property used for municipal purposes applies only to a municipality within the state.

There is contained within the Constitution of the State of Kansas a provision very similar to that contained in article 10, § 1, of the Constitution of the State of Indiana. Article 11, § 1, of the Constitution of the State of Kansas declares: "* * * the legislature shall provide for a uniform and equal rate of assessment and taxation; but all property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, * * * shall be exempted from taxation." This provision of the Constitution of the State of Kansas, in so far as it pertains to municipal purposes, was construed by the Supreme Court of that state in the case of State of Kansas, ex rel. Taggart, County Auditor, et al. v. Holcomb, County Clerk,

et al., 85 Kan. 178, 116 P. 251, 254, 50 L. R. A. (N. S.) 245, Ann. Cas. 1912D, 800. This was an action to compel the defendant Holcomb, as county clerk, to extend upon the tax rolls of the county, for taxation, the waterworks plant owned by the municipality of Kansas City, Mo., which was situated in Wyandotte county, Kan. It was held in this case that even though the waterworks plant was owned by a *municipality*, such *municipality*, however, being a citizen of the state of Missouri, it was not exempt from taxation by the state of Kansas. This is a well-reasoned opinion, in the course of which the court said: "And so it may be said here that, when a city of the state of Missouri comes into Kansas, it comes as a private party and brings with it none of the prerogatives of sovereignty. The general rule is that all property, not expressly exempted, is taxable, and the fact that the state does not tax itself and its municipalities to obtain revenue for itself is no reason why a foreign municipality, who is here in the capacity of a private proprietor, and whose property receives protection from the state, should contribute nothing towards that protection or should escape paying the taxes imposed upon other owners of property. It is clear that the exemptions from taxation, provided for the state and for cities and municipalities of the state, are only declaratory of the immunity that would be granted on fundamental principles of government, and that the cities and municipalities referred to in the statute and Constitution are those of our own state."

The state of Illinois has also a provision in its Constitution, article 9, § 3, providing that the property of municipalities, corporations, etc., may be exempt from taxation. The Supreme Court of Illinois had occasion to construe this provision of its Constitution in the case of People ex rel. Murray, County Collector, v. City of St. Louis, 291 Ill. 600, 126 N. E. 529, 531. In this case the question of taxation of a bridge between Illinois and Missouri is involved, which bridge was built and owned by the city of St. Louis, Mo. However, a part of such bridge extended into the state of Illinois. The question was whether or not such property was exempt from taxation in Illinois, as being the property of a *municipal* corporation, and it was held that it was not exempt from such taxation. In the course of the opinion, the court said: "Under this constitutional provision it cannot very well be argued that this bridge is exempt as a municipal corporation's property, as the municipality owning it is not a municipality of this

state, and it is clear that this section referred only to the municipal authorities within this state."

In the case of City Council of Augusta, Ga., v. Timmerman (C. C. A.) 233 F. 216, 219, the court said: "Unless otherwise expressed, all legislation of a state relating to cities and towns refers to the cities and towns of that state, and not of another state or country. * * * The General Assembly of South Carolina, legislating concerning taxation and exemptions of cities and towns, had no thought of cities and towns not subject to its legislation. The plain purpose was to exempt certain governmental agencies of its own municipal corporations." See also Spokane Water Company v. Kootenai County (D. C.) 199 F. 481.

It is, therefore, apparent that the statute in question, and upon which plaintiffs rely for exemption from taxation, can apply only to *municipalities* within the state of Indiana, and unless the bridge in question can be said to be for *municipal* purposes, so far as the city of Jeffersonville is concerned, the statute upon which plaintiffs rely must be declared to be in violation of the Constitution of the State of Indiana and void in so far as it seeks to exempt the property of plaintiffs from taxation. The city of Jeffersonville has no more interest in the bridge than any other city, the inhabitants of which use it to the same extent. It and its citizens have the privilege of using it, but must pay for that privilege. It is not owned, operated, or controlled by such city.

Under the facts in this case, it is apparent that the property sought to be exempted from taxation by plaintiffs is not such property as falls within the exceptions of article 10, § 1, of the Constitution of the State of Indiana. Therefore, in so far as the statute in question applies to the property of plaintiffs, which they seek to have exempted from taxation, it is unconstitutional and void. It was beyond the power of the Legislature, under the Constitution, to exempt such property from taxation.

The prayer of the plaintiffs for an injunction against the defendant will therefore be denied, and the bill of complaint dismissed for want of equity at plaintiff's costs.

A decree will be entered accordingly.