THE RIDDELL NATIONAL BANK OF BRAZIL ETC. *v.*
ENGLEHART, ET AL.

[No. 18,226. Field April 21, 1952. Rehearing denied
June 20, 1952. Transfer denied May 18, 1953.]

518

520

522

*Harvey L. Fisher*, of Brazil, *Robert G. Miller*, of Bloomington, and *Aikman, Piety & McPeak*, of Terre Haute, for appellant.

*Willis Hickam* and *Elliott Hickam*, both of Spencer and *George W. Henley*, of Bloomington, for appellees.

CRUMPACKER, J.—This is an action for damages brought by the appellees, adult children and heirs at law of Theodore W. Englehart, deceased, against the appellant who had served as administrator *de bonis non* in the settlement of their father's estate. The first paragraph of the complaint charges the appellant with the violation of its statutory duties as such administrator in that it failed and refused to close said estate by filing its final report within the time prescribed by statute and thereby permitted claims based on three alleged lost notes to be filed by three different claimants and prosecuted to judgment, although none of said claims was filed until more than two years after issuance of letters and publication of notice of administration, and each claim would have been barred had the appellant filed its final report within the time prescribed by statute. The second paragraph of the complaint alleges that the appellant made no adequate defense against the allowance of said claims and, despite records containing obvious errors, it refused to seek new trials or permit the appellees to do so in its behalf. Both paragraphs allege that the estate was rendered insolvent by the allowance and payment of said claims and the appellees' distributive shares thereof were lost to them. Issues

of fact were joined on this complaint and tried to the court which found for the appellees on both paragraphs thereof and assessed their damages in the sum of $20,221.66 for which judgment was entered.

The facts, pertinent to the first paragraph of the complaint, indicate that on September 27, 1939, one Albertis Moon filed in the office of the clerk of the Clay Circuit Court a claim against the estate of Theodore W. Englehart founded on a lost note in the sum of $3,000 and up to that time no other claims against said estate had been so filed. The appellant was then the duly appointed and acting administrator *de bonis non* of said estate and his final report was due on October 20, 1939. At and for several years prior to his death the said Theodore W. Englehart was an active partner in the firm of Klingler-Englehart Company doing business in Brazil, Indiana. That said business became insolvent and in 1938 a receiver was appointed by the Clay Circuit Court to liquidate its affairs. When the appellant's final report became due it knew that such receivership was pending and "that there were some very large liabilities which, no doubt, exceeded the assets, and that the Englehart estate would be called upon to contribute." For these reasons the appellant did not file its final report when due nor did it, on said date, make a formal showing of such facts to the court and procure an order of record continuing the administration of the estate. In the meantime other claims, also founded on lost notes, were filed and aggregated, with the Moon claim, the sum of $29,000. Due to the appellant's failure to file its final report on the due date all of said claims had been on file more than 30 days before final settlement was eventually made and therefore were not barred by the provisions of Burns' Stat., §6-1001, as they otherwise would have been. This resulted in the prosecution

of said claims to judgment and the consequent insolvency of the estate whereby there were no assets remaining for distribution.

In our opinion these facts do not support the court's judgment on this paragraph of the complaint which rests upon the following provision of the probate code: "Any executor or administrator may be sued on his bond by any . . . heir . . . for any of the following causes, viz: . . . Eighth. Failure to render an account of his proceedings whenever required by the court or the provisions of this act." Burns' Stat., 1933, §6-2101. This statute creates no actionable wrong on the part of an administrator for the unexcused failure to file his final report when due under the law unless such failure results in a devastavit. Granting that the appellant neither filed its final report when it was due nor was excused from doing so by the court in which the estate was pending, such violation of its statutory duty resulted in nothing more than subjecting the assets of the estate to the payment of claims which the court concluded, after a full and complete hearing, were valid debts of the decedent. It is true that had the appellant filed its final report on October 20, 1939, the claims in controversy would have been barred and said creditors could not have been heard to complain, Burns' Stat., §6-1001, but its failure or refusal to adopt a statutory procedure whereby it would be relieved of its obligation to pay the decedent's honest debts does not constitute a devastavit nor have the appellees lost anything to which they were entitled in equity and good conscience. Devastavit is any act of omission, negligence or misconduct of an administrator by which loss occurs to the estate, *Ayers* v. *Lawrence* (1874), 59 N. Y. 192; *Beardsley, Executor* v. *Marsteller* (1889), 120 Ind. 319, 22 N. E. 315, and we do not be-

lieve that an estate can be said to have suffered a loss through the payment of valid claims against it even though the law furnishes a maneuver by means of which payment could have been avoided.

As heretofore stated the second paragraph of the complaint seeks damages on the theory that the appellant made no adequate defense against the allowance of the lost note claims and despite trial records containing obvious errors it refused to seek new trials or permit appellees to do so in its behalf, all of which resulted in the estate's insolvency and consequent loss to the appellees.

The facts pertinent to this paragraph of complaint indicate that the appellees petitioned the court to be allowed to "assist" the appellant in resisting the allowance of the claims involved and were given authority to do so. Through their attorneys they were present at the trial of each of said claims and, although the control of the litigation remained with the appellant, they participated in the defense thereof. They requested the appellant to file an affidavit for a change of venue in each claim from Clay County which it refused to do and they thereupon made such application themselves which the court denied, presumably because they were not parties to the litigation. A bill of exceptions containing the evidence on each claim was filed in Clay Circuit Court and each was received in evidence in this case and the trial court, by its general finding, evidently concluded that each of said records reveals reversible error. The appellant refused to file a motion for a new trial in either of the lost note cases because it thought fair trials had been had and correct results reached and thereupon, within the time allowed for filing motions for new trials, the appellees served upon the appellant a written demand that it file such motions or, in the event of

the appellant's refusal to do so, that it permit them to do so at their own expense and, through their attorneys, to file such motions in the appellant's name as administrator and the appellees tendered with such demand a prepared motion for a new trial in each of said cases but the appellant's consent to their filing was not given. The appellees then tendered to the Clay Circuit Court their own motion for a new trial in each of said cases with their petition that the court permit their filing thereof but the court by its order in each case denied said petition and refused to permit the appellees to file any motion for a new trial.

The appellant's final report was filed September 25, 1941, and shows the estate to be insolvent to the extent of $15,460 by reason of the allowance of said lost note claims and proposed the settlement thereof at something less than 50 cents on the dollar. This report was met by exceptions filed by the appellees in which they objected to its approval in 14 particulars, all but 1, 2 and 4 of which were stricken out on motion of the appellant. The exceptions so stricken, when considered in their entirety, seek to defeat the final report on exactly the same grounds and on the same theory that damages are sought in the present action. On the trial of the remaining exceptions the court declined and refused to try any issue tendered by the exceptions which had been stricken out but confined the hearing to the matters raised by exceptions 1, 2 and 4, which are not involved here. After an amendment to the final report said exceptions were overruled and the report approved as amended.

The appellant contends that upon these facts we must conclude that the present case is a collateral attack on the lost note judgments and the court's judgment in approval of its final report. It is apparent that

the appellees, although present and assisting in the defense of the lost note claims, were not parties to said actions and had no control over them and had they been ordinary civil suits the judgments rendered therein would not have been binding upon the appellees merely because of their participation in the trials from which they resulted. Restatement, Judgments, §84; *Tobin* v. *McClellan* (1947), 225 Ind. 335, 73 N. E. 2d 679, 75 N. E. 2d 149; *City of Louisville* v. *Babb* (1934), 7 F. Supp. 658. However the disposition of these claims was merely incidental to the administration of the Englehart estate and the proceedings involved were neither actions at law nor suits in equity. They were special proceedings provided for and controlled by the probate code.

Burns' Stat., §6-2001, provides that: "Any person considering himself aggrieved by *any decision* of a circuit court, or judge thereof in vacation, growing out of any matter connected with a decedent's estate may prosecute an appeal to the Supreme Court. . . ." (Emphasis supplied). The right of appeal granted by this section of the code is not limited to the parties to the judgment involved and therefore the appellees, being aggrieved by the decisions on the lost note claims, had the right to appeal therefrom. *Jaqua* v. *Reinhard, Admr.* (1934), 99 Ind. App. 261, 190 N. E. 887. They contend however that they were circumvented in the exercise of this right by the refusal of the appellant to file motions for new trials and the refusal of the court to permit them to do so in their own behalf. Certainly a statute that gives an aggrieved person the right to appeal, whether a party to the record or not, must include, by implication, the right to take such preliminary steps as are necessary to make the appeal effective. So in this case, if a motion for a new trial

was necessary to properly present alleged error to this court, the appellees had the right to file such a motion and have it ruled upon. In *State ex rel. Balsley* v. *St. Joseph Superior Court* (1948), 226 Ind. 372, 81 N. E. 2d 373, the Supreme Court held that where the trial court strikes out a party's motion for a new trial his remedy is by appeal. The same remedy is necessarily available where the trial court refuses to permit the filing of the motion because such action is no different, in principle and result, than striking out such a motion after it has already been filed.

Furthermore if the appellees could not have appealed from the lost note judgments without first having filed motions for new trials therein, the court, by refusing to accept such motions, denied the right of appeal granted them by §6-2001, *supra,* and in aid of its appellate jurisdiction this court, on proper application, could have mandated the Clay Circuit Court to receive such motions. Burns' Stat., §3-3301; *State ex rel. Gilkison* v. *Clifford* (1950), 120 Ind. App. 84, 89 N. E. 2d 630. The appellees neither appealed from the court's decision refusing their motions for new trials, as they had the right to do under the authority of *State ex rel. Balsley* v. *St. Joseph Superior Court, supra,* nor did they seek relief through mandamus proceedings.

We are not now concerned with the question of whether or not the appellees had the right to have all the matters, of which they complain in this action, adjudicated by way of exceptions to the final report. They sought to do so but all such exceptions were stricken out upon the appellant's motion and said report, after a hearing on the remaining exceptions, was approved. If the appellees considered themselves aggrieved thereby they were entitled to ap-

peal from this approval order even though the admin-istrator had not yet been formally discharged, *Taylor* v. *Burk, Executor* (1883), 91 Ind. 252, and assign as error the striking of the exceptions above mentioned. This they made no effort to do.

While we agree with the appellees that the issues involved in the present litigation did not become res judicata through the court's approval of the appellant's final report yet the fact remains that the lost note judgments are the *sine qua non* of both paragraphs of the complaint. Said judgments are not void and to recognize a judgment for damages based on the fact that they are erroneous because of an inadequate defense and the refusal of the appellant to pursue a remedy that was also available to the appellees, would be to sanction a collateral attack upon them and upon the court's order approving the final report which gave them full faith and credit.

Judgment reversed and cause remanded with instructions to grant the appellant's motion for a new trial.

Royse, J., not participating.

Bowen, C. J. and Martin, J., dissent.

## DISSENTING OPINION

Bowen, C. J., (Dissenting Opinion in which Martin, J., Concurs.)

I cannot agree with the majority opinion in this case.

In my opinion, the record shows that the appellees established a good cause of action based upon Burns' Stat., §6-2101. The appellant administrator failed and refused to close the estate by filing its final report within the time prescribed by statute and thereby permitted claims based on three alleged lost notes to be filed by.

three different claimants and prosecuted to judgment, although none of the said claims were filed until more than two years after the issuance of letters and publication of notices of administration, and the estate thereby became insolvent.

The majority opinion which recites the foregoing facts proceeds on the theory that the cause of action created on behalf of an administrator for the unexcused failure to file his final report when due does not create such an actionable wrong unless such failure results in a devastavit, and that there is nothing in the record which would establish evidence of a devastavit.

When we examine the record in this case in connection with the type of evidence which was allowed to serve as the basis for the judgments on the lost notes claims, in the light of all of the other circumstances, including the administrator's refusal to take steps demanded by appellees, it seems clear that circumstances were shown by which the lower court could have concluded that the administrator did not act in good faith, and that the failure of the administrator in the instant case to file his final report did result in a devastavit.

It would seem that §6-2101 Burns' Stat., is rendered ineffectual as a remedy if the heirs of an estate are compelled to take some action during the course of administration under the probate code and prosecute an appeal to final judgment or thereby be barred from maintaining an action under this statute. As the majority opinion recites, the control of litigation in the probate matters remained with the appellant.

It seems that the effect of the majority holding requires that heirs of an estate must prosecute an appeal in probate matters, although not parties thereto, to preserve their cause of action against an administrator, thereby making such remedy exclusive and thereby to all

intents and purposes destroying any separate cause of action which might exist by virtue of §6-2101 Burns' Stat. Assuming for the sake of argument that the heirs as aggrieved parties might have a right of appeal under the probate code, it does not seem reasonable to deny them, in the event they have not so appealed, the right to prosecute a cause of action under §6-2101 Burns' Stat., under the circumstances shown in the record in this case.

The appellees did participate in the defense of such actions, but such participation was unavailing because of their lack of control, and the fact that they were not parties, and that the appellant refused their proper demands to insure an adequate defense, and refused to file a motion for a new trial. We think a better rule should be adapted to the circumstances of this case as enunciated in the case of *City of Louisville, et al.* v. *Babb* (1934), 7 F. Supp. 658, which was an action by the City and the Louisville Bridge Commission against the Treasurer of Clark County, filed in the U. S. District Court, Southern District of Indiana, to enjoin collection of tax on the Jeffersonville-Louisville bridge. Taxpayers had previously sued the Clark County Auditor in the Clark Circuit Court to mandate him to place the bridge on the tax duplicate and the bridge commission employed Mr. Wilmer T. Fox as attorney who appeared, with the Clark County attorney, for the defendant auditor. The plaintiffs had prevailed in that action, and the bridge was placed on the tax duplicate. The District Court denied the injunction on the merits, and in an opinion by Judge Baltzell said:

"Before one not a party to an action is bound thereby there must be shown affirmatively that such nonparty actually assumed control of the defense in such action, and that such defense was as

complete as though he had been an actual party thereto. This includes not only the trial in the first instance, but the right to appeal as well. (Authorities cited.")

The Court of Appeals, Seventh Circuit (75 F. 2d 162) reversed the District Court, holding the injunction should not have been denied on the merits, and at page 164 expressly approved the above-quoted holding of Judge Baltzell's opinion. Certiorari was denied by the Supreme Court. (295 U. S. 738, 79 L. Ed. 1686, 55 S. Ct. 650.)

The case relied upon in the majority opinion for the holding that the appellees had the right to appeal from the decision in the probate cause is *Jaqua* v. *Reinhard, Admr.* (1934), 99 Ind. App. 261, 190 N. E. 887. However, the facts of that case are clearly distinguishable from the facts in the case at bar. While this case holds that the right of appeal under §6-2101 Burns' Stat., is not necessarily confined to a party to a judgment, the parties who were held to have such right of appeal were sureties on an administrator's bond, which bond had been filed as a part of the record in a probate cause. In addition, in the foregoing facts, there was a motion for a new trial filed and overruled and, therefore, something from which an appeal could be taken.

In my opinion, the judgment of the lower court should have been affirmed.

Martin, J., concurs in this dissent.

Rehearing denied 106 N. E. 2d 465.

## ON PETITION FOR REHEARING

CRUMPACKER, J.—The appellees' petition for a rehearing questions the validity of our initial decision

herein because it reverses the judgment appealed from and was rendered by the court, sitting in banc, with one judge not participating and was concurred in by three judges only. It is argued that this is a statutory court and its decisions must be reached in the manner provided by statute and under the circumstances above indicated, four judges having failed to agree, our authority in the matter was limited to a transfer of the appeal to the Supreme Court for decision as provided by Burns' Stat., §4-209.

Our attention is called to the fact that, in the 51 years this court has been comprised of six judges, this is the first instance in which we have reversed the judgment of a trial court by a decision in which only three judges concurred. However in *Aetna Securities Co.* v. *Sickels* (1950), 120 Ind. App. 300, 88 N. E. 2d 789, 90 N. E. 2d 136, sitting in banc with one judge not participating, we *affirmed* the judgment below by a decision in which three judges concurred and two dissented. On petition to transfer the invalidity of a three judge decision under such circumstances was urged upon the Supreme Court but arguments in support of the contention, almost identical with those made here, were rejected and transfer denied. The fact that in the Sickels case we affirmed the trial court while in this one we reversed, seems to us of little consequence. If we had the power to decide upon the concurrence of three judges certainly we had the power to decide either way.

The appellees urge another reason as to why the Sickels decision should not control this one. They say that the opinion in that case indicates that the non-participating judge was disqualified to sit by Burns' Stat., §4-223, while in this case no such disqualification appears and therefore the three judge statute was never

brought into application. We realize that there is law to the effect that "In order that a judge may be disqualified, there must exist a ground authorized by law to disqualify him, and it is not for the courts to add other grounds of disqualification. As a general rule, where the grounds which will operate as a disqualification of a judge are expressly and comprehensively set out in a constitution or statute, such provisions are held to be exclusive, particularly where the grounds for disqualification prescribed by the statutes comprehend all those recognized at common law, . . ." 48 C. J. S. Judges, §77, p. 1045. Also "It is the duty of a judge, however, to exercise the judicial functions duly conferred on him by law, and he has no right to disqualify himself in the absence of a valid "reason, or when no party to the case could legally recuse him, . . ." 48 C. J. S., Judges, §93, p. 1080.

However, we must assume, until the contrary appears, that a judge of this court who, being physically able, chooses not to participate in a particular decision, does so for reasons compatible with legal ethics and recognized by law as conducive to the fair and impartial administration of justice.

We regard the refusal of the Supreme Court to transfer the Sickels case was decisive of the question under consideration and if the ruling in that case is erroneous the Supreme Court should say so and not us.

The appellees next contend that we erred in holding that if an administrator can but refuses to avail himself of the 30 day statute in order to bar a valid pending claim, its subsequent allowance and payment does not constitute a devastavit. The appellees have convinced us that this holding, as applied to the bare facts recited in our opinion, is contrary to the great weight of authority elsewhere than in Indiana

but it was predicated upon the express words of the Supreme Court that "payment of a just and legal claim against an estate is not, however, a devastavit" where the rights of other creditors are not affected. *Beardsley, Executor* v. *Marsteller* (1889), 120 Ind. 319, 22 N. E. 315. We realize that case did not involve the duty of an administrator to file his final report on time and thus bar a pending claim under the 30 day statute but it was concerned with what constitutes a devastavit and in that connection the court announced the rule above quoted. As the only result of the appellant's failure, in the present case, to file its report when due was the allowance and payment of pending claims found to be "just and legal," we concluded it was not liable for doing that which the Supreme Court says does not constitute a devastavit.

Quoting from appellees' brief it appears that "On June 28, 1932, the decedent Englehart as the surviving partner filed a schedule of the May 1 assets and liabilities of the Klingler-Englehart Company existing at the time of the death of Earnest G. Bush, a deceased partner. This appears in the bill of exceptions in the Celce, Moon claims and shows total assets of $93,047.35 and after deducting all indebtedness including notes which appellant itemizes the net value of the partnership at that time was $39,350. . . . Six months later Theodore Englehart died, and thereafter John Klingler did nothing to settle and close up the partnership affairs although such was his statutory duty as a surviving partner. Burns' Stat., §§5-301, et seq. Had he done so, all indebtedness of the partnership obviously would have been paid and a substantial net balance would have remained for distribution for the Englehart estate. Instead of complying with his statutory duty Mr. Klingler saw fit to renew existing notes and continue the operation of the business for four and one-half years, during

which time it became insolvent," and during almost two years of which time he was also administrator of the Englehart estate.

Thus, in apt language, the appellees have identified the devastavit which destroyed their father's estate— a devastavit in which they acquiesced and which they could have prevented by resort to the remedy afforded by Burns' Stat., §50-305. The appellees made no effort to have their father's estate administered upon his death, as they had the right to do, but on the contrary they were content to allow the same to remain in statu quo for almost five years. They had the right to withhold administration if there was no need for it but having elected to do so they cannot be heard to complain if claims developed which otherwise would never have come into existence. Obviously the appellant had nothing to do with these things and it does not seem to square with justice, the administrative objective of all law, that the appellant should be held liable to the appellees in damages for its failure to extricate them from a difficulty which could not have risen but for their own indifference and lack of diligence in the protection of their own interests. Their belated demand that the appellant do so by resort to the 30 day statute in no way relieves them from responsibility for their past omissions. In this respect we think this case differs from the many authorities to which the appellees refer us in support of their position.

The appellees take exception to our reference to the lost note claims as "the decedent's honest debts" and as "valid claims" against the estate. We did so because, having been filed, they were disallowed by the appellant, transferred to the trial docket of the Clay Circuit Court and there tried and reduced to judgments which stand unappealed from and unim-

peached except through the present proceedings which we consider a collateral attack upon them. We are compelled to regard them as the embodiment of "valid claims" against the estate until disturbed through proper procedure. No contention is made that they are void and upon collateral attack neither this court nor the trial court can rightfully consider the appellees' evidence as to mere error in their makeup.

We are also charged with error in reversing the judgment based on the second paragraph of the complaint. This attack seems to rest upon the theory that our decision completely nullifies Burns' Stat., §6-1013, which reads as follows:

> "It shall be the duty of every executor or administrator to inquire into the correctness of all claims filed against the estate that he represents, and make all available defenses thereto, and if he fails so to do, he shall be liable on his bond, at the suit of any person interested in the estate, for all damages sustained by the estate in consequence of such neglect."

This statute imposes two duties upon an administrator: (1) he must inquire into the validity of all claims against the estate; and (2) he must make all available defenses thereto. As to the first duty imposed on the appellant by the statute it seems to us that it submitted the claims involved to the highest type of inquiry—the judicial determination of their validity of a court of competent jurisdiction. The appellees seem to feel that the appellant should have allowed the claims and thus given them the opportunity to resist them despite such allowance as provided by Burns' Stat., §6-1017. This, they say, would have given them control of the litigation and, as parties thereto, their right to appeal would have been unquestioned. If we

accept the appellees' position in this regard we still cannot charge the appellant with an actionable breach of the duty imposed upon it by §6-1013, *supra,* because of the speculative nature of its consequences. Whether or not the procedure suggested by the appellees would have changed the result of the claims trials can only be surmised and certainly §6-1017, supra, was not designed to facilitate the appellees' right to appeal from a decision by which they considered themselves aggrieved. Their right to appeal such a decision was assured them by Burns' Stat., §6-2001, as was held in *Jaqua* v. *Reinhard, Admr.* (1934), 99 Ind. App. 261, 190 N. E. 887. On the facts, that case is distinguishable from this one but in deciding it the court announced the rule that any person was entitled to appeal from a decision of a circuit court growing out of any matter connected with a decedent's estate, who could show himself to have been aggrieved by such decision, as the word "aggrieved" is used in the statute. If rules and principles announced by courts were only applicable in cases involving identical facts we would have no science of law as an abstract theory.

The second duty imposed upon the appellant by §6-1013, *supra,* is that it was required to make all available defenses to the lost note claims. In what respect the appellant failed in that regard is not indicated by the evidence. Certainly the appellant's refusal to venue said claims to another county or to move for new trials preparatory to appeals does not constitute a failure to make available defenses within the meaning of the statute. As we construe the statute the word "defense" is used as meaning something that can be urged at the trial which, if established, will defeat the demand. Obviously a change of venue will not do that nor will a motion for a new trial

which, even if sustained, could have no bearing on the claimant's ultimate right to recover.

Sec. 6-1013, *supra,* does not sanction the retrial of claims already reduced to judgments nor does it constitute the court in which an action within its purview is filed, a court of appellate review. It contemplates a suit for damages against an administrator if a claim against the estate, by reason of his failure to properly investigate its validity or urge an available defense against it in court, is reduced to judgment. Under such circumstances no attack is made on the judgment. It is recognized as valid and unimpeached but proof is made that had the administrator properly investigated the claim upon which it rests he would have discovered, for example, that such claim had been paid or, being chargeable with knowledge of such defense, he failed to urge it as a result of which it became a binding judgment which the administrator was legally obligated to pay and thus the estate suffered a needless loss.

The appellant is not chargeable, of course, with the court's refusal to permit the appellees to file motions for new trials in the lost note cases but they say that because the procedure through which they might enforce their right to do so was burdensome and expensive the appellant should be charged with a devastavit because it refused to file such motions through its own attorney or through theirs, as a consequence of which the lost note judgments had to be paid without the benefit of a review for error. We are not convinced that such a situation constitutes an exception to the rule against collateral attacks on erroneous judgments.

This appeal presents other questions which, in view of the conclusions expressed in our initial opinion, we

considered it unnecessary to discuss. Perhaps it is well that we do so now. At the trial the appellant sought to prove that on November 22, 1939, one month and two days after its final report was due, it filed a petition in the Clay Circuit Court to continue the administration of the Englehart estate because its affairs were extensively involved in the Klingler-Englehart Company receivership. That the court found such facts constituted good cause for not closing the estate at that time and entered a formal order granting the petition. The appellant objected to the reception of this evidence on the theory that the petition and order came too late and could not retroactively exonerate the appellant for its failure to close the estate on October 20, 1939. They were sustained in this position and the evidence was excluded. The appellant insists that this was error and we agree. Granting that the appellant was under a positive statutory duty to file its final accounting not later than October 20, 1939, it must be conceded that such duty was not an absolute one if good cause existed at that time for not doing so. Whether or not there was good cause for delaying settlement necessarily depended upon circumstances existing at the time the final report was due and not upon events developing thereafter. The court judicially knew that the affairs of the Englehart estate and the Klingler-Englehart Company receivership were co-mingled on October 20, 1939, because both proceedings had been pending before it for several years and its adjudication that such fact constituted good cause for not closing the estate on November 22, 1939, was necessarily an adjudication that the same "good cause" existed on October 20, 1939. As far as we can see the fact that the adjudication of the issue was tardy is of no consequence.

It also appears that the appellant sought to prove· that the probate court, in considering matters pertaining to the Englehart estate, orally announced from the bench its decision to keep such estate open until the affairs of the Klingler-Englehart Company receivership had progressed to the point where the estate's liability for the partnership's debts could be determined and that such time had not arrived when its final report became due under the statute. This evidence was excluded on the theory that a court of record speaks only through its orderbook entries. We agree that the existence of such a decision could be shown only by the court's records, *State ex rel. Davis* v. *Achor, Judge* (1947), 225 Ind. 319, 75 N. E. 2d 154; *State ex rel. Thompson* v. *Rhoads* (1946), 224 Ind. 136, 65 N. E. 2d 248, but as bearing on the culpability of the appellant's conduct in failing to perform its ostensible statutory duty we think it was admissible. Surely the appellant ought not to be charged with an actionable wrong because it heeded oral orders of the court, whose officer it was and under whose supervision it administered its trust, rather than seeing to it that the court· reduced such orders to formal record on the very day its report was due. We find but one case in Indiana which throws any light upon this question. In *State ex rel. Rosenbrock* v. *Wilson* (1939), 106 Ind. App. 357, 14 N.· E. 2d 319, the decedent's heirs sought recovery on the bond of the executors of his will. The breach claimed was a failure of the executors to use due diligence in collecting notes due the estate and recovery was denied upon trial. There was evidence that the executors thought the notes were uncollectible and so informed the judge of the court in which the estate was pending who orally directed that no suit be brought

to collect them. After the death of such judge the executors again reported the situation to his successor who "likewise told the executors" not to sue. In affirming the judgment this court said: "We believe that the executors were entitled to heed the advice of the judges of the court wherein the estate was pending." The appellees discount this decision because there was ample evidence in the record showing that the notes involved were in fact worthless and no amount of diligence on the part of the executors could have effected their payment and therefore the judgment of the lower court would have been affirmed even though the judges of the probate court had issued no oral instructions. This court, however, did not see fit to rest its decision wholly on that ground but chose to consider such oral instructions in determining whether the facts warranted the release of the executors from personal responsibility. It necessarily follows that if an administrator or executor is entitled to govern his conduct by the attitude of the judge of the court wherein the estate is pending, as expressed orally, it is proper for him to prove that he knew of such attitude.

The record is not clear as to when the probate court in the present case made the oral announcement in question. If made after the appellant's final report was due it could afford no justification for a failure to comply with the mandate of the statute. However no ojection to the proffered evidence was made on that ground and we cannot assume that the time would not have been fixed had the appellant been given an opportunity to do so.

Inasmuch as this opinion announces rulings on the admissibility of testimony which were not discussed in our initial opinion we will entertain a supplemental petition for rehearing if the appellees desire to seek one.

Rehearing denied.

Royse, J., not participating.

Bowen, J. and Martin, J., dissenting.

Note: Reported in 106 N. E. 2d 465.