Nov. Term,
1861.

Scott
v.
Scott.

----

## Scott *v.* Scott.

Suit for a divorce, by a husband against his wife, charging cruel treatment, &c. The defendant answered, admitting the allegations of the complaint; and an agreement was made and filed by the parties, relating to the disposition of their children and property. The cause was submitted to the Court upon the pleadings and said agreement, without other evidence, and a divorce was refused.

*Held*, that under the general chancery practice, a default did not, in suits for divorce, as in other suits, supersede the necessity of proof, or lighten the burden resting on the plaintiff to establish the charges preferred; but

Nov. Term,
1861.

SCOTT
v.
SCOTT.

a default, acknowledgment, or consent for judgment, by the defendant, it was generally supposed, settled the case as against him, so that he could not complain of any lawful disposition the Court might afterward make of it.

*Held*, also, that it would appear to follow that if the defendant, being the wife, should admit of record the charges in the complaint entitling the plaintiff to a divorce, she would deprive herself of the right, under our statute, to an order for alimony, during the pendency of the proceedings.

*Held*, also, that the public interests, and the rights of third persons not before the Court, require that the State shall exercise some control over the marital relation, and that suits for divorce are not mere actions between the parties to the marriage contract, to be governed by the ordinary rules of procedure in civil suits ; and hence, our law requires the prosecuting attorney to resist all applications for divorce, that are not otherwise defended.

*Held*, also, that the Court below did not err in refusing a divorce.

Saturday,
December 7.

APPEAL from the *Grant* Circuit Court.

HANNA, J.—*Samuel Scott* filed his complaint, praying a divorce, and charging *Matilda Scott*, his wife, with cruel and inhuman treatment toward him, in this: that she was a consummate scold, giving him no peace when in her presence, neither day nor night; that she was of violent temper, and threatened to inflict upon him personal injuries, to such a degree that he had not for two years considered it safe to lodge under the roof with her, and had therefore been compelled for that time to absent himself from his home, through fear of his life, or great violence; and had failed in repeated efforts to conciliate her, that they might live together. ·

The defendant filed an answer, not sworn to, admitting the allegations in the complaint, and stating that they were true ; and, the record states, the parties filed an agreement, which appears, and is in reference to the disposition of their children and property. It is refreshing to see that they agreed twice in a long life; once, that they would be united, and again that they would be separated.

The case was submitted upon the pleadings and said agreement. The court refused a divorce ; and overruled a motion for a new trial. Was the ruling correct, is the only question in the record.

Counsel for the appellant take it for granted that the charges and allegations in the complaint, if true, entitled the applicant to a divorce. Waiving an inquiry into that matter,

for the present, but assuming the position to be correct, we proceed to the question on the pleadings. Should a divorce have been granted upon the pleadings alone?

Nov. Term, 1861.

SCOTT
v.
SCOTT.

Under the general chancery practice, a default did not, in suits for divorce, as in other suits, supersede the necessity of proof, or lighten the burden resting on the plaintiff in establishing the charges preferred. *Pa'mer* v. *Palmer*, 1 Paige, 276; *Van Veghten* v. *Van Veghten*, 4 Johns. Ch. 501; 1 *id.* 488; *Barry* v. *Barry*, 1 Hopkins, 118; *Welch* v. *Welch*, 16 Ark. 527. But a default, acknowledgment, or consent for judgment, by a defendant, it was generally supposed, settled the case as against him, so that he could not complain of any lawful disposition the Court should afterward make of the case. It would appear therefore to follow, that if the defendant, being the wife, should admit of record charges in the complaint entitling the plaintiff to a divorce, she would deprive herself of the right, under our statute, to an order for alimony, during the pendency of the proceedings.

Formerly, it was supposed that not only the parties to the record, plaintiff and defendant, but also a third party, the government, was so far interested in such proceedings as to guard against divorces by collusion, even when "they both appear and confess the matter upon which a sentence of divorce was to pass." *Collett's case*, 2 Mod. 314; *Cobbe* v. *Garston*, Milward, 529, 537; *Whitington* v. *Whitington*, 2 Dev. & Bat. 64; *Berthelemy* v. *Johnson*, 3 B. Mon. 90; *Gould* v. *Gould*, 2 Aikens, 180. This rule has been carried so far as to forbid divorces upon the sole evidence of the confessions of the defendant out of Court. See cases above cited. Still, such confessions may be heard, and receive such weight as they are entitled to, in connection with other evidence. *Holland* v. *Holland*, 2 Mass. 154; *Mortimer* v. *Mortimer*, 2 Hag. Con. 310; *Matchin* v. *Matchin*, 6 Barr, 332. But should be well considered, and cautiously weighed, because they often affect persons not before the Court as parties, namely, the children of the parties.

We come to the question whether our statute changes this rule, long established upon this subject. Whether under the law declaring marriage a civil contract, 1 R. S. 1852,

§1, p. 361, a suit to annul such contract, or to dissolve the obligations thereby entered into, is now a mere action between the parties to such contract, the man and the woman, and governed by the usual and ordinary rules of procedure in civil suits.

We are not at liberty to consider the statute "declaratory of the law regulating marriages," above referred to, alone, but must also, in connection therewith, examine that "regulating the granting of divorces," 2 R. S. 233; the last section of which, p. 238, is, that "whenever a petition for divorce remains undefended, it shall be the duty of the prosecuting attorney to appear and resist such petition."

If the theory that the government has some interest in, and something to do with, the status of the citizen, does not prevail, we are not informed of the necessity of this latter statute. Where such a suit remains undefended, a government officer, one who stands as the representative of the government in bringing offenders against the criminal laws to justice, is thus commanded to resist such petition. Why is this? Is it not because persons not before the Court will be affected by its action in the premises? Is it not because public policy requires that government shall exercise some control in reference to this relation in life? If government can not, or should not, exercise this control, why pass laws at all to regulate marriage and divorce? Why not leave the husband, as of old, to write his wife a bill of divorcement and give it to her in her hand, and send her out of his house Deut. xxiv, 1–4.

The marriage relation is more sacred; the obligations imposed thereby, it appears to us, somewhat different from those resting upon parties in a mere contract for the purchase of a mule or a hog.

With this view of the subject generally, and of the law as it existed at the time of the adoption of our statute, we are prepared, so far as necessary, to consider that portion thereof relied on by the appellant. It is §13 of the last quoted statute, namely, "The defendant shall answer said petition under oath, if required so to do by the petitioner; but no decree shall be rendered by default, without proof; nor

shall any admissions made in said answer be used as evidence in any other case against said defendant, nor shall the denial under oath, by the defendant, of the facts alleged in the petition, render necessary any other or further proof by the complainant than would have been necessary if such denial had not been under oath."

It is argued that because it is thus provided that the admission made in the answer shall not be used in any other suit, therefore the inference is strong that it should be used in the suit pending.

It might be admitted that it could be used as evidence in the pending controversy, and yet, considering this statute alone, or in connection with former adjudications, it would not follow that it should be considered as either sufficient or conclusive. *McCulloch* v. *McCul'och*, 8 Blackf. 60. But it is then argued that marriage being under our statute a civil contract, an application for divorce should be considered in the light of a civil suit, and governed by the rules prescribed in such suits, one of which is that "every material allegation of the complaint not specifically controverted by the answer, shall, for the purposes of the action, be taken as true." 2 R. S., § 74, p. 44.

We have already said sufficient upon this branch of the subject, as to the effect of the answer of the defendant upon her rights, and in relation to the intervening rights of the government, guarding the question of public policy and the interests of persons not before the Court, &c. The rights of this third party are supposed to be in the care of the constituted tribunals. *Cross* v. *Cross*, 3 Paige, 139. We perceive no error in the conclusion arrived at by the Circuit Court upon the admissions in the pleadings.

*Per Curiam.*—The judgment is affirmed, with costs.

*H. S. Kelley* and *J. A. Jones*, for the appellant.