STATE EX REL. DAVIS *v.* ACHOR, JUDGE.

[No. 28,322. Filed October 23, 1947.]

*Campbell & Campbell,* of Anderson, for relatrix.

Harold E. Achor, Judge, *pro se.*

GILKISON, J.—In a verified petition for writ of prohibition the relatrix alleges that she and one Edmond Davis were husband and wife. That the husband brought suit for divorce in the Superior Court of Madison County, in which action relatrix filed a cross-complaint, and upon trial of the cause before the judge, on July 15, 1940, she was granted a divorce, the care and custody of their two children, and the father was ordered to pay $10 a week for their support. On January 28, 1946, the father filed a petition to modify the order of custody of the children. In the meantime the respondent, Harold E. Achor had become judge of the court involved, and after hearing the evidence, made an order on February 25, 1946, as follows: "Decree modified and defendant granted care and custody of James William and Robert Eugene until further order of the Court." That relatrix thereafter continued to retain custody of the children pursuant to this order.

That about May 1, 1947, after more than three terms of court had passed, and without any additional pleading filed or any notice to relatrix, and upon his own motion the respondent judge changed the order of custody of said children, giving them to the father, the plaintiff in the divorce action, and ordered relatrix to appear with the two children in his court, and unless he is prohibited from so doing he will order her to deliver the children to the father, who will take them to the state of Ohio where he lives and thus out of the jurisdiction of the court.

A writ of prohibition is prayed, prohibiting respondent judge from ordering the children turned over to the father, and to expunge from the record his entries made in said matter. An alternative writ of prohibition was issued June 6, 1947.

The respondent judge filed his verified response, in which he admits many of the factual averments of the relatrix petition, and gives the complete order made on February 25, 1946, thus: "Come now the parties and the decree is hereby modified as to custody. And the defendant is hereby awarded the care and custody of James William and Robert Eugene, following the present term of school, and the defendant is further ordered to appear on September 16, 1946, relative to the continued custody of said children, and he is further ordered to produce said children with him at said hearing. Reasonable visiting privileges are at all times granted." He then avers that on June 14, 1946, the plaintiff in the divorce action filed his affidavit against the defendant, the relatrix herein, charging her with a violation of the order of custody made February 25, 1946. That a citation was served on relatrix, and the parties appeared and submitted their evidence thereon on June 22, 1946. That the ambiguity of the record made February 25, 1946, was noted, and the court modified the record to remove the ambiguity. The order of modification being as follows:

"IT IS THEREFORE NOW CONSIDERED, ADJUDGED AND DECREED by the Court herein that the order made on February 25, 1946, be modified to conform to the finding and order of the Court, actually made on that date. That plaintiff be granted the care and custody of the two minor children of the parties, namely, James, age 10, and Robert, age 6, and that said order be effective as of February 25, 1946. That the defendant, Maxine F. Davis, appear before this Court on the 1st day of July, 1946, at 9:00 o'clock A. M., and show cause why she should not be cited for contempt of this Court, for having failed to obey the order of this Court so entered herein.

"Read and signed in open court this 22nd day of June, 1946.

"(Signed) Harold E. Achor,

"Judge, Madison Superior Court."

He then avers that "further evidence was heard July 1, 1946, with no change in the record being made except that visiting privileges were fixed. The children were ordered delivered to the plaintiff." There is nothing to indicate that any record was made of this action.

He further avers that the parties appeared in court on September 6, 1946, and "without any record being made at the time the plaintiff was directed to enroll the children in school at Loudonville, Ohio . . . ." That the children remained with the father until May 1, 1947, "at which time the court's attention was called to the fact that the defendant (the mother) had, by subterfuge, taken the children from school at Loudonville, Ohio, and had brought them home with her to the city of Anderson, with only about three weeks remaining in the current school term. Thereupon this defendant, Harold E. Achor, as judge of the Superior Court of Madison County, upon his own motion, ordered a citation for the defendant to appear and show cause why she was not in contempt of the order of the court hereinbefore made regarding the children of the parties . . . ." It is then averred that the record order is as follows:

"It being shown to the Court that the defendant has removed the children of the parties from the custody of the plaintiff and has taken them from the school which they were formerly attending, contrary to the order of this Court, on the Court's own motion a citation is ordered issued for the defendant to appear at 9:00 o'clock A. M., May 3, 1947, to show cause why she is

not in contempt of Court, and she is ordered to produce said children in open court at that time."

He then avers:

"Finally, there was a submission of the proceedings for contempt, and, upon partial hearing of the evidence, and it appearing to the Court that the plaintiff was a proper person to have the care and custody of the children, and, that he had provided them with every reasonable care to be expected of him, it was determined and ordered that the children should be returned to the plaintiff on or before June 7, 1947, and that no further proceedings should be had in the matter until the children were first returned to him by the defendant, as previously ordered by the Court, and the matter was continued until such order had been complied with." However, no record was made of this alleged submission, determination and order.

Blackstone's definition of a court of record is as follows:

> "A court of record is that where the acts and judicial proceedings are enrolled in parchment for a perpetual memorial and testimony, which rolls are called the record of the court and are of such high and supereminent authority that their truth is not to be called in question."
> 14 Am Jur. § 7 *Courts*, p. 250.

"In modern courts the parchment roll is discarded, but their records still retain their character as a judicial memorial of 'high and supereminent authority.'" 14 Am. Jur. § 136 *Courts*, p. 349. The acts of a court of record are known by its records alone and cannot be established by parol testimony. The court speaks only through its records, and this rule applies in case of a judge. Without its records

a court has no vitality.  14 Am. Jur. § 137 *Courts*, p. 350; *O'Malia* v. *State* (1934), 207 Ind. 308, 311, 192 N. E. 435.

The Superior Court of Madison County is a court of record and its judge can speak only by the records of the court over which he presides.

During the term at which a judgment is taken, it may be set aside or modified and the parties must take notice of the action of the court without being served with notice.  *Burnside* v. *Ennis* (1873), 43 Ind. 411, 413, 414; *Richardson* v. *Howk* (1874), 45 Ind. 451, 458. *McClellan et al.* v. *Binkley* (1881), 78 Ind. 503, 504, 505; *Hufford* v. *Lewis* (1902), 29 Ind. App. 202, 203, 204, 64 N. E. 99; *Domestic Block Coal Co.* v. *Holden* (1914), 56 Ind. App. 634, 640, 103 N. E. 73; *Papuschak* v. *Burich* (1933), 97 Ind. App. 100, 105, 185 N. E. 876.

The mere fact that a case may remain on the docket of a court after a final judgment is rendered does not mean that the entire matter is *in fieri* during such time.  A final judgment terminates the adversary proceedings.  Thereafter, it is on the docket only for the purpose of carrying into effect the judgment rendered and not for any action to modify or change the judgment.  So far as the adversary proceedings are concerned it is no longer *in fieri* after the expiration of the term at which the judgment was rendered.  After that time the court can make no order changing, modifying or correcting the judgment, except upon notice, again bringing the parties before it or upon their voluntary appearance.  *Perkins* v. *Hayward* (1892), 132 Ind. 95, 31 N. E. 670; *Kruger* v. *Duckwall* (1922), 78 Ind. App. 577, 579, 134 N. E. 895; *Jasper* v. *Tartar, Judge* (1928), 224 Ky. 834, 7 S. W. (2d) 236.

An order for custody of the children made in granting a divorce, cannot anticipate the changes that may occur in the conditions of the parents, or in their habits, character and fitness to have the custody and care of the children. Changes in conditions and other causes may make it necessary for the good of the children that their custody be changed. Such orders therefore are interlocutory in nature and subject to modification at any future time during the lives of the parents and the minority of the children upon good cause shown. *Stone* v. *Stone* (1902), 158 Ind. 628, 631, 632, 64 N. E. 86; *Zirkle* v. *Zirkle* (1930), 202 Ind. 129, 132, 133, 172 N. E. 192; § 3-1224, Burns' 1946 Replacement; *Jasper* v. *Tartar, Judge, supra.*

In actions for a decree of separation from bed and board, sometimes referred to as an action for limited divorce, our statute provides as follows:

> "As regards the custody, care and maintenance of the children in such family, the court can make (such) provisions as justice and expediency require. From time to time afterwards, on the petition of either party, the court may revise and alter such decrees . . . concerning the care, custody and maintenance of the children as the altered circumstances of the parents and the benefit of the children may require." § 3-1232, Burns' 1946 Replacement.

This statute is but declaratory of the law with respect to placing the custody of infant children in divorce proceedings as it existed prior to the enactment of the statute.

But the order of the court as to the custody of the children in a divorce case is binding upon the parties until the same is modified or set aside. *Zirkle* v. *Zirkle, supra.*

In proceedings for the modification of orders in divorce decrees relative to custody of minor children after the close of the term at which the divorce judgment was rendered, it has been generally held that proper notice to the adverse party and an opportunity to be heard are required whether or not provided for by statute. 17 Am. Jur. § 685 *Divorce and Separation,* p. 519, 520; 76 A. L. R. Anno. C 253; 27 C. J. S. § 315 *Divorce,* p. 1182, § 317, p. 1193. It has also been held that failure to give notice renders the modification order invalid. 27 C. J. S. § 317, *supra*— Notice or Process—p. 1193; *Jasper* v. *Tartar, Judge, supra; Gitsch* v. *Wight* (1922), 61 Utah 175, 211 P. 705; *State ex rel. Tatum* v. *Ramey* (1909), 134 Mo. App. 722, 115 S. W. 458; *Franklin* v. *Bonner* (1926), 201 Ia. 516, 207 N. W. 778. So far as we can find, an Indiana court has not been heretofore called upon to pass upon a situation where the court acted *sua sponte* and without notice to change an order for custody of children in a divorce proceeding after the close of the term at which the judgment was rendered. However, we think there can be no doubt that such a change cannot be made unless there is a voluntary appearance to the application by the opposite party, or unless such party is given proper and sufficient notice of the filing of the application and the time and place when and where it will be heard, so that both parties may have an opportunity to be present, both sides may be heard, and the court may be fully informed when passing upon such a vital question as changing the custody of little children.

In deciding this precise question the Supreme Court of Kentucky, in *Jasper* v. *Tartar, Judge, supra,* at page 837, said:

"It is a fundamental principle of Anglo-Saxon jurisprudence that no judgment is valid unless the defendant therein is brought before the court and given an opportunity to be heard. In other words, all litigants are entitled to their day in court, and any judgment against them, in any wise affecting their rights, made and entered contrary to that principle, is of no effect whatever and may be ignored by the one against whom it is rendered as though it had never been done. The proposition is too fundamental to require the citation of authority in support of it."

In speaking of a statute (Acts 1891, § 2, p. 366), Burns' R. S. Anno. 1894, § 3189 and later amended, § 22-2803, Burns' 1933, authorizing a court to take infant children from their parents and commit them to a "Board of Children's Guardians" under certain conditions, Judge Elliott, among other things, said:

"The statute violates no constitutional principle, inasmuch as it guards the interest and rights of parents by requiring that their children shall not be taken from them without a hearing, upon due notice, in the courts of the state."

*In the Matter of VanWalters* v. *Board of Children's Guardians, etc.* (1892), 132 Ind. 567, 570, 32 N. E. 352. It would seem impossible for a judge to "hear with deliberation, act with impartiality and decide upon the law and the evidence," if he hears but one side of the case and gives the other no opportunity to be heard. When there is a decision by a court changing the custody of children, such a decision is in essence and effect, a judicial judgment and it can not be changed except upon proper application, sufficient notice to the opposite party, and a full hearing of the evidence as to a change in conditions.

A judge must always be impartial so that he may hear the evidence fairly. Having once settled the cus-

tody of the children in a divorce case he may not change that custody *sua sponte.* He may not act as attorney for either party. He must, under all conditions remain the judge of the court, passing upon issues impartially and as they are presented to him. When he has made his record with respect to the custody of children and the term of court at which it was made has ended, that record remains binding upon every one, including the judge, until it is regularly modified in the manner provided by law. Of course, a judge should not make ambiguous records, but if he does so inadvertently and the term of court ends before he discovers the ambiguity, and the parties have made conflicting claims in reliance upon the ambiguous records so made, the ambiguity may be clarified upon proper application, notice and hearing. But they may not be modified *nunc pro tunc,* without a sufficient memorial, memorandum, entry or writing from which to make such *nunc pro tunc* modification. *Wills* v. *Wills* (1911), 176 Ind. 631, 634, 635, 96 N. E. 763; *Illinois Pipe Line Co.* v. *Fitzpatrick* (1934), 207 Ind. 1, 4, 5, 188 N. E. 771; *Moerecke* v. *Bryan* (1915), 183 Ind. 591, 595, 108 N. E. 948; *O'Malia* v. *State, supra,* nor without proper application and notice. *Pittsburgh, Etc., R. Co.* v. *Mosher* (1923), 193 Ind. 577, 579, 580, 141 N. E. 322; *Baltimore, Etc., R. Co.* v. *Berdon, Admr.* (1924), 195 Ind. 265, 277, 145 N. E. 2, 150 N. E. 407; *Neuenschwander* v. *State* (1928), 200 Ind. 64, 67, 161 N. E. 369. Even then it would be a harsh application of the law to cite a party for contempt for acting in good faith in obedience to the ambiguous order, from the time it was made until the date it was changed by the *nunc pro tunc* entry.

It is therefore ordered that the temporary writ issued herein be made permanent and that the respondent be

330

and he is hereby permanently prohibited from taking further action to enforce his order made in cause No. 2908 entitled *Edmond W. Davis* v. *Maxine Davis*, pending in the Madison Superior Court, on February 25, 1946, as attempted to be modified by an order made June 22, 1946.

NOTE.—Reported in 75 N. E. (2d) 154.