In re the MARRIAGE OF Marilee L.
HENDERSON, Appellant
(Petitioner Below),

and

James Edward Henderson, Jr., Appellee
(Respondent Below).

No. 4–682A163.

Court of Appeals of Indiana,
Fourth District.

Aug. 31, 1983.

Arden W. Zobrosky, Marion, for appellant.

Edward A. Pollen, Seymour, for appellee.

MILLER, Judge.

Appellant Marilee Henderson Rich (Marilee) appeals from the denial of her motion under Ind.Rules of Procedure, Trial Rule 60, for relief from a judgment which had transferred custody of her three minor children to their father, appellee James Edward Henderson, Jr. (James). Marilee's marriage to James was dissolved July 18, 1980, and Marilee was granted custody of the parties' three minor children. (Julie, then age 8, Ann, age 7, and Douglas, age 4). Little

more than a year after the divorce, however, the court granted James's motion to modify the custody decree and awarded custody of the children to him. This modification forms the basis for the instant appeal, wherein Marilee asserts she was not given notice of any hearing on James's petition to modify and, further, that an evidentiary hearing, required by law, was not held. Because the court failed to fix a hearing date on James's motion to modify custody then before it and give notice thereof to Marilee, we must reverse. We also agree with Marilee's contention that a court may not summarily modify custody without evidence supporting such modification.

## FACTS

The facts pertinent to this decision are as follows:

Marilee and James were divorced July 18, 1980. On October 3, 1980, the court, after observing that both parents were fit and proper persons to have custody of the three children of the marriage, found it was in the children's best interests to award custody to Marilee while granting liberal visitation privileges to James. The court also ordered James to pay $70 per week child support and one-half of medical, dental, and optical expenses not covered by insurance. The arrangement did not prove to be a smooth one, however, as difficulties in the parties' relationship did not end with their divorce. Indeed, James and Marilee came before the court numerous times during the ensuing months for resolution of disputes concerning visitation, child support, property disposition and attorney's fees. The discord between them escalated in the summer of 1981, causing a flurry of court action which we summarize briefly here:

May 28, 1981—James filed motion for rule to show cause alleging Marilee violated court's decrees in the matters of visitation, child support and property disposition.

June 11, 1981—Marilee filed a motion to modify custody order to cancel James's visitation rights, alleging he was guilty of misconduct so as to distress the children

and further asserting the visitation endangered the children's physical health and emotional development.

June 18, 1981—After a hearing on James's May 28, 1981, motion for rule to show cause, with both parties present, the court established a new summer visitation schedule giving James custody for one-half the summer and allowing visitation by Marilee and directed the parties to submit additional data before July 3, 1981, regarding James's May 28, 1981, claim alleging Marilee violated the court's order regarding property disposition and child support.

June 25, 1981—Marilee filed affidavit for attachment alleging that James refused to allow Julie, the oldest of the children, to accompany her for overnight visitation during the period of time James had the children for summer visitation. She claimed James physically assaulted her when she went to pick up the child and asserted that James is mentally unbalanced and is trying to poison the children against her. She prayed for immediate custody and an order requiring James to submit to psychiatric treatment.

July 2, 1981—The court held a hearing on Marilee's affidavit regarding James's visitation violations. After conferring extensively with Julie in chambers, court found that she had chosen freely and voluntarily not to visit Marilee and that no adverse pressure had been placed on the child to influence her decision.

On July 3, 1981, one day after the last-mentioned hearing, Marilee, without the court's or James's knowledge, left Indiana with the parties' two youngest children and her new husband, Daniel Rich, and traveled to Blackwell, Oklahoma, where she established residence. Shortly after Marilee's departure, on July 13, 1981, James filed several documents with the court, including: (1) a belated answer to Marilee's June 11, 1981, motion to modify; (2) a cross motion to modify the court's previous custody order, alleging a change of circumstances and asking the court to grant James full custody of the children and to absolve him of responsibility for support payments to Marilee; (3) a petition for contempt citation, in which he averred that Marilee failed and refused to return the children to him following her weeknight visitation and that, while the children were believed to be in Marilee's custody and control, their whereabouts were unknown; and (4) a proposed rule to show cause regarding the contempt citation. The above-mentioned documents, with the exception of the rule to show cause, contained a certificate of service which averred that James's attorney had served a copy of the pleadings upon Patrick N. Ryan, Marilee's counsel of record, on July 11, 1981.

On July 13, 1981, the date these pleadings were filed, Ryan moved to withdraw his appearance for Marilee, citing the fact that he had been unable to contact her and did not know her whereabouts. On that date, the court, using James's proposed rule to show cause, ordered Marilee to appear at 9 A.M., July 20, 1981 to show cause why she should not be held in contempt for the alleged visitation violations. A copy of this order to appear, as well as the petition for contempt citation and the motion to modify, were served by the Grant County Sheriff's Department on July 16, 1981, by leaving a copy at Marilee's last and usual place of residence in Marion, Indiana.

On July 20, 1981, with only James and his counsel present, the court sustained Ryan's motion to withdraw and found Marilee in contempt. It also set a "return date" for James's motion to modify for August 3, 1981, and ordered service by the sheriff of James's motion at Marilee's last known address. The next entry regarding custody modification was made on August 25, 1981, wherein the court, without holding a hearing or receiving any evidence, sustained James's motion to modify. In doing so, it made the following findings, among others: (1) circumstances had changed, in that the children now desired to live with their father; (2) Marilee had so "misconducted" herself that the well-being and safety of the minor children was in doubt; and (3) "Return on [James's] Motion to modify was not made by August 3, 1981." The court

granted custody to James and ordered Marilee to pay $70 per week child support and James's attorney's fees. It also ordered a body attachment on Marilee, which was returned the following day marked "not found in bailiwick."

James then located the children in Oklahoma and obtained custody of them in October, 1981, by means of a writ of habeas corpus. On November 24, 1981, Marilee filed her "Motion for Relief from Judgment and to Vacate Judgment" pursuant to T.R. 60. The court thereupon held an evidentiary hearing, during which it heard testimony from Tom Sutton, an acquaintance of Marilee and her new husband, Daniel Rich, who stated he had been given a standard power of attorney by Marilee and Daniel prior to their leaving for Oklahoma. By the power of attorney, Sutton was to take care of the Riches' business and to receive their mail, which was forwarded to his address by the post office. Sutton testified he received mail from the court but did not open it. He did, however, have phone conversations with Marilee and her husband during which he told them of the receipt of the court correspondence. He delivered the mail he received from the court to the Riches when he visited Oklahoma September 16, 1981.

The trial court denied Marilee's motion, which denial resulted in the instant appeal.

## DECISION

■ We begin our discussion with a brief description of the statutory procedure for modification of custody. Under Ind.Code 31–1–11.5–20, such proceeding is commenced by the filing of a petition. The party opposing the requested modification may file an answer or a counter petition but is not required to do so.[1] Further, it has been firmly established that once a petition has been filed and the modification action initiated, the trial court's procedural tasks include: (1) setting the cause for

hearing; (2) giving appropriate notice to the parties of the hearing date; and (3) conducting a full hearing on the evidence as to change of custody. *State ex rel. Davis v. Achor,* (1947) 225 Ind. 319, 75 N.E.2d 154; *Leohr v. Leohr,* (1974) 161 Ind.App. 514, 316 N.E.2d 400; *see Hayden v. Hite,* (1982) Ind. App., 437 N.E.2d 133. Custody may be changed only upon a showing of changed circumstances "so substantial and continuing as to make the existing custody order unreasonable." Ind.Code 31–1–11.5–22; *Poret v. Martin,* (1982) Ind., 434 N.E.2d 885, 888 (wherein the court instructed that the change of circumstances must be of a "decisive nature" and the change be "necessary for the welfare of the child."); *Smith v. Dawson,* (1982) Ind.App., 431 N.E.2d 850; *In re Marriage of Ginsberg,* (1981) Ind.App., 425 N.E.2d 656.

In the case at bar, Marilee filed a motion to modify the custody order on June 11, 1981, requesting that James's visitation rights be revoked. James requested an extension of time to respond to Marilee's petition, and the trial court granted an extension to July 24, 1981, but set no hearing date on Marilee's motion. On July 13, 1981, James filed his answer to Marilee's petition and his cross motion for modification asking that the children be placed in his custody, accompanied by his request for a contempt citation regarding Marilee's alleged visitation violations. James's counter petition for modification did not constitute a new cause of action but was instead a part of the custody proceedings instituted by Marilee. IC 31–1–11.5–4(c); IC 31–1–11.5–20. These pleadings were delivered to Marilee's attorney on July 11, 1981.

Ancillary to the modification proceedings, the court ordered Marilee to appear July 20, 1981, to show cause why she should not be held in contempt on her alleged visitation violations. A copy of the court's order was left at Marilee's last and usual place of residence, along with a copy of James's

---

1. IC 31–1–11.5–20 states that the filing of a custody petition shall be pursuant to Ind.Code 31–1–11.5–4(a) or (b) (which provisions govern proceedings for dissolution or marriage and child support). IC 31–1–11.5–4(c) instructs, "A responsive pleading or counter petition *may* be filed under this [Dissolution of Marriage] chapter. [Ind.Code 31–1–11.5–1 *et seq.*]" (Our emphasis.)

petitions for contempt citation and for modification. She did not appear and was found in contempt.[2] On that day, the court also granted a petition by Marilee's attorney to withdraw his appearance. The court then, with respect to the modification proceedings, entered the following order: "Return date for respondent's [James's] motion to modify set for August 3, 1981, and service of said motion by Sheriff ordered at petitioner's [Marilee's] last known address."

■ In reviewing the foregoing order, we are perplexed by the court's setting a "return date" on James's cross motion to modify. Ordinarily, a return date appears in a summons which accompanies an original action and signifies the date by which a party must appear and plead or face a default judgment. Thus, Ind.Rules of Procedure, Trial Rule 4(C), in prescribing the form of summons, requires it to contain:

> "(5) The time within which these rules require the person being served to respond, and a clear statement that in case of his failure to do so, judgment by default may be rendered against him for the relief demanded in the complaint."

See *Franklin v. McDaniel*, (1965) 137 Ind. App. 257, 206 N.E.2d 618. Here, however, setting a return date was unnecessary. Marilee had initiated the custody proceedings by filing her own motion to modify.

The fact that her attorney had withdrawn did not withdraw her previous pleading. *Horsley v. Lewis*, (1983) Ind.App., 448 N.E.2d 41.[3] See *Adams v. Purtlebaugh*, (1952) 230 Ind. 269, 102 N.E.2d 499 (where the court held that, although petitioner's attorney withdrew his appearance, petition for modification had not been withdrawn or dismissed and thus, new petition for modification could not be filed by same party while first remained pending). Marilee was already before the court and by statute, no response to James's petition to modify was required of her. IC 31–1–11.5–4(c); *Cf. Cunningham v. Cunningham*, (1982) Ind. App., 430 N.E.2d 809; *In re Marriage of Brown*, (1979) Ind.App., 180 Ind.App. 1, 387 N.E.2d 72. The setting of a return date was therefore superfluous.

■ Further, while the court ordered James's motion to be served on Marilee, it did not fix a hearing date on either Marilee's petition or James's cross petition. Even if the August 3, 1981, return date could somehow be construed as setting a hearing date (no specific hour was stated), we note there is no indication in the record that Marilee was ever notified of the August 3rd date. It does not appear the clerk served notice on Marilee by mail pursuant to Ind.Rules of Procedure, T.R. 72(D). Likewise, although the Sheriff was ordered

2. In the recent case of *In re Marriage of Wiley*, (1983) Ind.App., 444 N.E.2d 315, the wife preliminarily attacked the husband's motion to modify a child support order. She unsuccessfully moved to dismiss his motion on the grounds that the trial court was without power to hear or grant relief to a party who is in contempt of a trial court order. Judge Shields quoted the following language from *Smith v. Smith*, (1963) 118 Ohio App. 276, 279, 194 N.E.2d 168, 170:

> "In certain situations in divorce actions, as where a party has violated a previous order or failed to comply with such order, the court may be justified in denying such party affirmative relief.... But where the question to be determined is the inability of the party to pay an amount previously fixed, a different rule prevails. If payment in full, as fixed in the former order, is a condition precedent to the court's power to reduce the payment, and the party becomes absolutely unable to pay, the order would remain unaltered and

> regardless of defendant's inability to pay, the order could never be changed."

444 N.E.2d at 319–20. It might be argued in this case that any affirmative relief with regard to property or modification of the custody order should be withheld while Marilee remained in contempt. However, we would reject any suggestion that her contemptuous conduct denied her right to notice of a hearing on James's motion to modify. *Accord, State ex rel. Davis v. Achor, supra.*

3. In *Horsley*, the party's attorney filed a responsive pleading on his client's behalf and then withdrew his appearance. This court held the withdrawal of the attorney did not act as a withdrawal either of the pleadings, which remained of record, or the party. Here, as in *Horsley*, the judge may have felt that Marilee was out of the case but, since no response was required, the proper procedure would have been to fix a hearing date, with notice to the parties.

to serve James's motion at Marilee's last known address, the record does not disclose a sheriff's return. In any event, such service would not have constituted notice of a hearing but would have merely given notice that a motion had been filed, as the return date order was not a part of James's motion. Further, the record shows no hearing was held, either on August 3 or at any other time. Indeed, the court later clarified its record to show that James's motion to modify was sustained on August 25, 1981, in a perfunctory manner *without* an evidentiary hearing, apparently in the fashion of a default judgment typically entered upon a liquidated claim.

This recitation of the events leads inevitably to a conclusion that the court entered a default-type judgment in James's favor on August 25, 1981, without setting a hearing thereon, giving notice to Marilee or hearing evidence. These procedural defects require reversal, as they constitute a violation of Marilee's constitutional rights. *Hayden v. Hite, supra* (due process requires reasonable notice and an opportunity to be heard before a person can be deprived of custody), and are further violative of our statutory provisions which we interpret as contemplating an evidentiary hearing with notice to the parties. *See State ex rel. Davis v. Achor, supra; Leohr v. Leohr, supra.*

Although not necessary for our decision here, we feel the propriety of the trial court's action in modifying custody without requiring proof in support of James's motion needs to be discussed in order to guide the trial court to a proper resolution of this dispute on remand. The question appears to be one which has not been directly addressed in this jurisdiction. Because we are dealing with the best interests of the children here, we believe the trial court's failure to hear evidence to establish those interests would require reversal, even if the

court had fixed a time for hearing and given proper notice.

First, we feel the statutory procedure contemplates a hearing and the taking of evidence in regard to a petition for modification.[4] Also especially persuasive in this regard is the following language from *State ex rel. Davis v. Achor, supra* (wherein our supreme court prohibited the enforcement of a modification order entered *sua sponte* by the trial court without proper application or notice):

> "So far as we can find, an Indiana court has not been heretofore called upon to pass upon a situation where the court acted sua sponte and without notice to change an order for custody of children in a divorce proceeding after the close of the term at which the judgment was rendered. However, we think there can be no doubt that such a change cannot be made unless there is a voluntary appearance to the application by the opposite party, or unless such party is given proper and sufficient notice of the filing of the application and the time and place when and where it will be heard, *so that both sides may be heard, and the court may be fully informed when passing upon such a vital question as changing the custody of little children.*" (Our emphasis.)

225 Ind. at 327, 75 N.E.2d at 157. The court continued:

> "When there is a decision by a court changing the custody of children, such a decision is in essence and effect, a judicial judgment and it can not be changed except upon proper application, sufficient notice to the opposite party, and a full hearing of the evidence as to a change in conditions."

*Id.* at 328, 75 N.E.2d at 158.

■ We observe that although certain Indiana decisions contain references to child custody orders being entered after default,

---

**4.** The hearing requirement is discussed in several statutory provisions. Ind.Code 31–1–11.5–22 instructs that a custody modification may be made "upon a *showing* of changed circumstances so substantial and continuing as to

make the existing custody order unreasonable." (Our emphasis.) Ind.Code 31–1–11.5–23 requires that custody proceedings receive priority in being set for hearing.

a closer examination of their facts reveals that although the decrees were entered when one parent failed to appear, hearings were held and evidence received. *See, e.g., Mueller v. Mueller,* (1972) 259 Ind. 366, 287 N.E.2d 886; *Loeser v. Loeser,* (1974) 160 Ind.App. 236, 311 N.E.2d 636, *cert. den.* 419 U.S. 1122, 95 S.Ct. 806, 42 L.Ed.2d 822. It has also long been established the law does not favor default-type judgments (where no evidence is presented) in the divorce context. *See* 27A C.J.S. *Divorce* §§ 149, 165 (1955) and cases cited therein. Our own courts have expressed their disapproval of the granting of a divorce without a hearing, both under the former fault divorce system, *see, e.g., Sostheim v. Sostheim,* (1941) 218 Ind. 352, 32 N.E.2d 699; *Scott v. Scott,* (1861) 17 Ind. 309; *Eikenbury v. Eikenbury,* (1904) 33 Ind.App. 69, 70 N.E. 837; and under the new "no fault" divorce law, *see, e.g., Flora v. Flora,* (1976) 166 Ind.App. 620, 337 N.E.2d 846; *Bennett v. Bennett,* (1977) 172 Ind.App. 581, 361 N.E.2d 193.

Further, the general rule that, in the event of a default, the material allegations of the complaint are to be taken as true has been limited to require proof where the amount of damages to be awarded in the default judgment is uncertain or unliquidated, *Stewart v. Hicks,* (1979) Ind.App., 395 N.E.2d 308, where the consequences of the default would be severe, *Klapprott v. United States,* (1949) 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266,[5] or where "the necessity of proof arises from the the particular nature of the action in which the public has an interest." 47 Am.Jur.2d *Judgments* § 1180 (1969).

Returning to the question before us, we find the granting and modification of an award of custody is a matter of grave consequence ·for the parties involved and a matter in which the public has an interest.[6] In a custody proceeding, the court seeks to arrive at an informed decision serving the best interests of a minor child who may have neither the means nor the wherewithal to speak for himself in a matter which will have a profound effect upon his life. We thus conclude that a court faced with a petition to modify must hear the pertinent evidence before making its decision as to what action would be in the child's best interests, even when one of the parties fails to appear. In arriving at this conclusion, we find supportive language in the case of *McKinney v. Kelley,* (1957) 120 Vt. 299, 141 A.2d 660, U.S. *cert. denied* 356 U.S. 972, 78 S.Ct. 1135, 2 L.Ed.2d 1147, *reh. den.* 357 U.S. 944, 78 S.Ct. 1382, 2 L.Ed.2d 1558. In *McKinney,* the mother failed to appear for a hearing on the father's petition to modify custody. The father presented evidence regarding change of circumstances, after which the trial court, unconvinced, rejected the father's petition. The appellate court affirmed. On rehearing, the court, in response to the father's argument that the mother's default was determinative of the custody issue, made the following observation:

> "The [father's] misconception, we fear, however, reaches greater depths. There is a good deal in his brief to indicate that he regards this matter altogether too much like a default in a collection suit. The mother had not appeared to contest the petitioner's claim. It follows, he seems to think, that a judgment order should issue in his favor, almost as a matter of course, where his case is not contested. But this is not a mere contest of property rights between two parties. *The welfare of a child is not a matter of default.* By reason of this fact it was particularly incumbent on the court to

---

**5.** In *Klapprott,* the Supreme Court, in setting aside a default judgment which had deprived a naturalized citizen of citizenship without a hearing or evidence, stated:

> "Even decrees of divorce or default judgments for money where there is any uncertainty as to the amount must ordinarily be supported by actual proof."

335 U.S. at 612–13, 69 S.Ct. at 389–90, *modified* 336 U.S. 942, 69 S.Ct. 384, 93 L.Ed. 1099.

**6.** *See Duckworth v. Duckworth,* (1932) 203 Ind. 276, 179 N.E. 773, 774 ("Three interests are involved in all questions touching the custody of children, those (1) of the child, (2) of the parents, and (3) of the state."); 10 I.L.E. *Divorce* § 161 (1958).

weigh and evaluate the evidence with utmost care. The court's overall conclusion will not be disturbed by us unless the record discloses that the discretion of the trial court was exercised on grounds, or for reasons, clearly untenable, or to an extent clearly unreasonable. *Houran v. Preferred Accident Ins. Co.,* 109 Vt. 258, 270, 195 A. 253." (Our emphasis.)

120 Vt. at 313–14, 141 A.2d at 670. *See also Henrikson v. Henrikson,* (1975) 26 Ill.App.3d 37, 39, 324 N.E.2d 473, 475 ("Nothing short of a hearing relating to unfitness and the interest of the child and a finding thereon is adequate support for an order changing custody."); *Szczawinski v. Szczawinski,* (1962) 37 Ill.App.2d 350, 185 N.E.2d 375; *Kipper v. Vokolek,* (1977) Mo.App., 546 S.W.2d 521; *Mitchell v. Mitchell,* (1979) 67 A.D.2d 924, 413 N.Y.S.2d 34, 35–36 ("A change in custody should, at the very least, follow a full hearing in which all relevant aspects of the matter are considered and weighed by the court.").

We therefore reverse and remand to the trial court with instructions to give notice to the parties and to hold an evidentiary hearing on the pending motions to modify (our record does not disclose Marilee withdrew her petition). We also order the trial court to allow each party an appropriate time to amend his or her pleadings in order to reflect the current circumstances of the participants. We further acknowledge that substantial time has elapsed since the entry of the modification order herein appealed, and the children have thereby resided with the father for a considerable length of time. In order to cause minimal disruption, the children should remain with the custodial father while the hearing on the motions is pending.

Reversed and remanded.

CONOVER, P.J., and YOUNG, J., concur.