**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ROBERT J. PALMER**
May, Oberfell, Lorber
Mishawaka, Indiana

ATTORNEY FOR APPELLEE:

**FREDERICK B. ETTL**
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JASON WILSON, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1204-DR-153 |
| | ) | |
| KELLY (WILSON) MYERS, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Margot F. Reagan, Judge
Cause No. 71D05-0411-DR-640

**December 12, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Since the marriage of Jason Wilson and Kelly (Wilson) Myers was dissolved, they have been entangled in numerous court battles over their children. At issue today is Wilson's contention that he is entitled to reversal of an order modifying primary physical custody of the parties' two children from Wilson to Myers because of the trial court's lack of formality during various proceedings. He also requests that we remand the case to the trial court for an assessment of appellate attorney fees and expenses.

We conclude that Wilson is precluded from complaining about the unique procedures utilized by the trial court because he acquiesced in them. We also conclude that remand is unnecessary. Accordingly, we affirm the judgment of the trial court.[1]

### FACTS

The marriage of Wilson and Myers was dissolved in 2006. By agreement of the parties, the dissolution decree awarded Wilson with primary physical custody of B.W. and A.W., who are now fourteen and eleven, respectively. In February 2011, Myers filed a petition to modify custody, asking for primary physical custody of A.W. At a hearing on the petition, Myers alleged that A.W. had asked to live with her and that Myers was now remarried and "a stay-at-home mom [who] can devote a significant amount of time to [A.W.'s] care and upbringing." Tr. p. 3. The trial court ordered a custody evaluation to be performed by the Domestic Relations Counseling Bureau (DRCB).

---

[1] After Myers's Reply Brief was submitted, Wilson filed a "Motion for Leave to Respond to Appellant's Reply Brief." In response, Myers submitted a "Motion to Strike, and Memorandum in Opposition to, Appellee's Motion for Leave to Respond to Appellant's Reply Brief." Because we affirm the trial court's judgment solely from the arguments made in the Appellant's Brief, the Appellee's Brief, and the Appellant's Reply Brief, we deny both motions.

After the initial intake interviews, the DRCB sent a letter to the trial court recommending family counseling and summarizing some of the issues presented by the family, including that Myers and B.W. had a "strained" relationship. Appellee's App. p. 2. The DRCB also submitted to the trial court in-camera interviews of the children.

Wilson initially agreed to counseling but later reneged and had to be court-ordered to participate. Upon reports that he continued to resist counseling, the trial court obtained consent from both parties to speak directly to personnel at Lincoln Therapeutic. Nevertheless, at a subsequent status hearing, Myers reiterated her belief that Wilson was resisting counseling because her relationship with B.W. had improved. She urged the trial court to speak directly to Karen Davies, the counselor who had been seeing Wilson and Myers. Wilson's counsel claimed that Davies had "become very biased" but did not object, even after the trial court stated, "I'm willing to [talk to Davies]. . . . I often do talk directly to counselors and I try and get as much information as I can . . . ." Tr. p. 76.

On November 21, 2011, Myers filed an amended motion to modify custody, this time asking for primary physical custody of both children. Although an evidentiary hearing was scheduled, the parties agreed to postpone the hearing indefinitely to allow the DRCB to conduct a child custody evaluation for both children.

In February 2012, Lincoln Therapeutic Executive Director Jeannine Curtis wrote a letter to the court advising that Wilson had secretly recorded a number of his counseling sessions, expressing outrage at this conduct, and asking the court to order him to relinquish any and all tapes. Curtis also stated she believed that Wilson's "focus is on the

3

'win' rather than what is best for the children." Appellee's App. p. 16. That same day, the court ordered Wilson to deliver the recording device and all of his recordings to the court. The court also scheduled a hearing on the amended motion to modify custody.

At the March 19, 2012 hearing, both Wilson and Myers appeared in person and by counsel. Curtis and Davies were also present, having been asked by the trial court to attend the hearing. At some point, the trial court stated, "I think we've gotten to the point where I'm ready to rule on [the custody modification petition]. But first I want to hear from the parties and I want to hear from [Curtis] and [Davies]. And I definitely want to know why there was taping going on." Tr. p. 85. No oath was administered. Rather, the hearing consisted of a sort of discussion with everyone participating.

After the trial court declared its intention to rule on the custody modification petition, Wilson's attorney requested an evidentiary hearing and a second in-camera interview of the children. Without waiting for a response from the court on these motions, however, Wilson's counsel turned to the issue of the tape recording and explained that Wilson had believed that taping the sessions was legal. Wilson explained that he had taped the sessions because he felt as if he was not "getting a fair shake" from the counselors and thought that they might lie. Id. at 88.

Curtis explained that Lincoln Therapeutic does not allow recording to protect the privacy of everyone on its premises. When asked what she believed Wilson's motivation for the recording to have been, Curtis replied that "the only reason [she] could see . . . would be to gain some sort of advantage to win." Tr. p. 92. Curtis also testified that

4

Wilson had been "grilling" the children after their counseling sessions. Id. at 104. Myers reiterated that despite Wilson's interference with her relationship with B.W. to the point that there was "virtually no relationship" between them, their relationship had improved after D.W. went to only a few counseling sessions. Id. at 98. Davies also testified, characterizing Wilson's cooperation in therapy as "resistant" and stating that although she "didn't always agree with [Myers], . . . Myers took responsibility for her mistakes, [but she] could never get . . . Wilson to take any responsibility." Id. at 100-01.

Near the end of the hearing, the trial court stated:

> I don't want to look at particular instances. . . . [I]t's the whole picture. And I'm very disturbed by it. Especially the fact that it kept going. [sic] We kept trying to resolve this in the best way for the kids. And in the meantime, I feel like we've wasted a year. . . . I don't understand why we would need an evidentiary hearing. Because I want to grant the Amended Motion to Modify Custody to give both the children to Ms. Myers.

Id. at 102-05. The court then chastised Wilson, saying, "you need to try in the best interest of your children. There was no effort here." Id. at 106.

At the court's request, Myers's counsel prepared a form order, which stated that Myers's motions to modify custody were granted and awarded custody of the children to Myers. The order recited no findings of fact. Wilson's counsel objected to the form order, stating that she believed the order to be deficient. On March 21, 2012, the court issued the order modifying custody that Myers's counsel drafted.[2] Wilson now appeals.

---

[2] On April 4, 2012, the Court issued an amended order modifying custody after Wilson requested clarification on a provision of the order regarding the children's schooling. However, neither party provided this Court with a copy of the amended order. Wilson is reminded that the appellant is to provide this Court with everything that may be necessary to resolve the appeal. See Appellate Rule 50(A). As the

5

## I. Standard of Review

At the outset, we note that "in family law matters, trial courts are afforded considerable deference." D.C. v. J.A.C., No. 32S04-1206-DR-349, slip op. at 1 (Ind. Nov. 13, 2012). Accordingly, we review custody modifications for abuse of discretion and will set aside a judgment only when it is clearly erroneous. In re Marriage of Richardson, 622 N.E.2d 178, 178 (Ind. 1993). A judgment is clearly erroneous if it is clearly against the logic and effect of the facts and circumstances before the court. In re Paternity of M.J.M., 766 N.E.2d 1203, 1208 (Ind. Ct. App. 2002). In the absence of special findings, the decision of a trial court is reviewed under a general judgment standard and will be affirmed if it can be sustained upon any legal theory consistent with the evidence introduced at trial. Id. We do not reweigh the evidence or assess witness credibility, and we consider only the evidence and reasonable inferences supporting the trial court's decision. Id.

## II. Evidentiary Hearing

Wilson first claims that the trial court denied him an evidentiary hearing on Myers's petition to modify custody. To show such a hearing was denied, Wilson points to his counsel's declaration at the March 19, 2012 hearing that he was "entitled to an evidentiary hearing on the issue of custody" and the trial court's later reply that "I don't understand why we would need an evidentiary hearing." Tr. p. 86, 105.

---

amended order modifying custody likely superseded the original order modifying custody, it should have been provided either in addition to or in the place of the March 21, 2012 order.

Wilson also directs us to In re Marriage of Henderson, 453 N.E.2d 310 (Ind. Ct. App. 1983). In Henderson, one party failed to appear at a custody hearing, and the trial court, without hearing any evidence, modified custody in favor of the parent who appeared. Id. at 315. On appeal, this Court likened the procedure employed by the trial court to that of a default judgment, which was held to be inappropriate because "[t]he welfare of a child is not a matter of default." Id. at 316. However, as the trial court's decision in this case was not a default judgment, Henderson is easily distinguishable.

We agree with Wilson that it is of utmost importance for a trial court to consider all of the pertinent information for it to make a reasoned decision regarding a petition to modify custody. Alexander v. Cole, 697 N.E.2d 80, 83 (Ind. Ct. App. 1998). However, we believe that the trial court fulfilled its duty to consider the relevant evidence not only through the evidence presented at the March 19, 2012 hearing, but also through evidence presented at prior hearings, the court's communications with the counselors, and the in-camera interviews reviewed by the court. See Haley v. Haley, 771 N.E.2d 743, 747 (Ind. Ct. App. 2002) (upholding a custody modification decision when evidence was presented at hearings conducted on various dates rather than at one full-blown evidentiary hearing).

In the present case, the trial judge had been involved with this family's various custody and parenting time disputes since 2009. Appellant's App. p. 8. In the year after Myers initially petitioned to modify custody, the court held frequent hearings and status conferences at which the parties provided information relevant to modification. Id. at 9-14. The DRCB also provided feedback, including in-camera interviews of the children,

7

and with the consent of the parties,[3] the trial court spoke to personnel at Lincoln Therapeutic. Id. at 43; Appellee's App. p. 1-3; Tr. p. 45. Finally, at the hearing on March 19, 2012, which was in fact an evidentiary hearing, the court heard argument from both parties and unsworn testimony from Curtis and Davies. Tr. p. 86-87, 91-93, 97-105. To the extent that Wilson contends that the counselor's unsworn testimony was not substantive evidence and that he was denied an opportunity for cross-examination of the counselors, these claims are waived because Wilson failed to object. See Werner v. Werner, 946 N.E.2d 1233, 1246 (Ind. Ct. App. 2011) (holding that by failing to object at trial, an appellant waived her claims of error to unorthodox hearing procedures), trans. denied. As a result, Wilson's claim that he was denied an evidentiary hearing fails.

## II. The Custody Modification Decision

When an initial custody determination is made, both parents are presumed equally entitled to custody. In re Marriage of Nienaber, 787 N.E.2d 450, 455 (Ind. Ct. App. 2003). Once this initial decision is made, however, a child's need for stability requires that custody not be changed lightly. Kirk v. Kirk, 770 N.E.2d 304, 308 (Ind. 2002). Indeed, a trial court is authorized to grant a petition to modify custody only if the modification is in the best interests of the child and there is a substantial change in one or more of the best interests factors, including: (1) the child's age and sex; (2) the wishes of

---

[3] Although Wilson now claims his consent was only for billing issues, this assertion is undermined by the fact that at the time of the consent, the parties also disputed whether Wilson was resisting counseling because he resented the developing relationship of Myers and B.W. Tr. p. 44-45. Moreover, there is no evidence that the release signed by the parties was limited in any way, and Wilson did not later object to the trial court speaking to Davies about matters unrelated to billing. Id. at 76.

8

the child's parent(s); (3) the child's wishes, with more consideration given if the child is at least fourteen years of age; (4) the interaction and interrelationship of the child with the child's parent or parents, the child's sibling, and any other person who may significantly affect the child's best interests; (5) the child's adjustment to the child's home, school, and community; (6) the mental and physical health of all individuals involved; (7) evidence of a pattern of domestic or family violence by either parent; and (8) evidence that the child has been cared for by a de facto custodian. I.C. §§ 31-17-2-8, 21.

Wilson contends that there was no evidence presented from which the court could have found a substantial change in any of the statutory factors or that modification was in the best interests of B.W. and A.W. Reply Br. p. 10. Rather, Wilson claims, the trial court's decision was based entirely on its displeasure with his actions of recording a number of counseling sessions. Id. at 10-12.

Generally, cooperation or lack thereof with a trial court's standing custody order, in and of itself, is not an appropriate ground for modifying custody. In re Paternity of M.P.M.W., 908 N.E.2d 1205, 1208 (Ind. Ct. App. 2009). Thus, it is improper for a trial court to order a change of custody to punish one parent. Id. However, a parent's lack of cooperation or misconduct may be taken into account to the extent that such behavior implicates a parent's misdirected motives with regard to a child's best interests. See Leisure v. Wheeler, 828 N.E.2d 409, 415-16 (Ind. Ct. App. 2005) (holding that one parent's act of recording a child's telephone conversations with the other parent may be

9

considered in a modification proceeding if the recording was intended not to protect the child but to interfere with the child's relationship with the other parent).

Here, the record shows that Curtis believed Wilson's resistance throughout the counseling process indicated that he cared more about "the win" than about the best interests of his children. Tr. p. 91-92; Appellee's App. p. 15-16. Because the trial court seemingly accepted this interpretation, it could have viewed this testimony as showing a substantial change in either factor 4 or factor 6, inasmuch as Wilson's motivations would be suggestive of his relationships with his children or his mental health. See Tr. p. 102-06; I.C. §§ 31-17-2-8(4), -8(6). The counselors' testimony about Wilson's refusal to accept responsibility for any mistakes he made in parenting and his "grilling" of the children after their counseling sessions are further evidence that could bear on one of these factors. Tr. p. 101, 104.

The trial court could also have found a substantial change from other evidence in the record. First, the initial custody determination was obtained through an agreement of the parties. Appellant's App. p. 5. The very fact that Myers was now seeking custody indicates that there was a substantial change in the wishes of at least one of the parents. See I.C. § 31-17-2-8(2). In addition, A.W.'s desire to live with Myers and B.W.'s improving relationship with Myers could also have been viewed as substantial changes in a number of the best interests factors. See Tr. p. 3, 43-44, 98; I.C. §§ 31-17-2-8(1), -8(3), -8(4); Julie C. v. Andrew C., 924 N.E.2d 1249, 1257 (Ind. Ct. App. 2010) (stating that a child's desire for an increased relationship with a noncustodial parent can properly be

10

viewed as a substantial change in the best interests factors and taking into account that the trial court may have obtained further evidence of this through in-camera interviews). This is even more compelling given that nearly seven years had passed since the original custody decree. See Richardson, 622 N.E.2d at 180 (noting that as children grow older and mature, more weight is given to their desires to live with one parent or the other). Thus, the trial court's order was supported by sufficient evidence.

Wilson also claims that the modification order itself was deficient because it lacked specific findings. However, pursuant to Indiana Trial Rule 52(A), a trial court is not required to set forth special findings of fact and conclusions of law in its order unless a party makes a written request for special findings prior to the admission of any evidence. Stevenson v. Stevenson, 173 Ind. App. 495, 501, 364 N.E.2d 161, 165 (1977). Wilson concedes that he did not request special findings, but he still claims that the court's order was deficient. Reply Br. p. 6. According to Wilson, although a trial court modifying custody need not make special findings indicating which of the best interests factors have substantially changed, it is nonetheless required to issue written findings that there has been a substantial change in the statutory factors and that modification of custody is in the best interests of the children. Id.

Wilson's proposition is not supported by the text of Trial Rule 52(A) or by the plain language of the modification statute, which requires only that the trial court "shall consider" the best interests factors in deciding whether a custody modification is warranted. I.C. § 31-17-2-21; see also K.I. ex rel. J.I. v. J.H., 903 N.E.2d 453, 458 (Ind.

11

2009) (upholding a custody modification where the trial court did not explicitly find that the modification was in the child's best interests). In other words, because Wilson did not request special findings prior to the admission of evidence, the trial court did not err by not including special findings in its order modifying custody.

In light of the above, while we may not know the precise basis on which the trial court's decision was premised, such is not required. The trial court's modification decision could have been based on any number of factors discussed above. Thus, we decline to set aside the judgment.

### III. Attorney Fees

Finally, we reach Wilson's request that we remand this case to the trial court for an assessment of appellate attorney fees. We assume he means his own. However, the trial court was never deprived of jurisdiction to award appellate attorney fees to either party. See Wagner v. Wagner, 491 N.E.2d 549, 555 (Ind. Ct. App. 1986). Therefore, Wilson's request for remand is denied.

The judgment of the trial court is affirmed.

ROBB, C.J., and BRADFORD, J., concur.